508 So.2d 1381 (1987)
Clifton HOLIDAY
v.
BORDEN CHEMICAL.
No. 87-C-0454.
Supreme Court of Louisiana.
June 22, 1987.
Rehearing Denied September 3, 1987.
David Robinson, Attorney at Law, for applicant.
Stephen Vogt, Edward Dubuisson, Dubuisson & Dubuisson, for respondent.
MARCUS, Justice.
Clifton Holiday brought suit against his former employer, Borden Chemical, a division of Borden, Inc., and its insurer, to recover permanent total disability benefits under the Louisiana Worker's Compensation Law for a back injury sustained by him during the course and scope of his employment. He also sought penalties and attorney fees. He filed another suit against Union Mutual Life Insurance Company seeking long term disability benefits under a policy issued by that company. The two suits were consolidated for trial. The parties stipulated at trial that plaintiff's medical expenses were not at issue because Borden had either paid or assumed responsibility for all medical expenses. The trial judge rendered judgment in favor of Borden, finding that there was no work-related injury which would provide worker's compensation. Accordingly, he dismissed plaintiff's suit against Borden with prejudice. A separate judgment was rendered in favor of plaintiff and against Union Mutual decreeing plaintiff totally disabled within the intent and meaning of Union Mutual's long term disability policy. He was awarded benefits under said policy. Penalties and attorney fees were rejected.
*1382 Plaintiff took an appeal in both cases. Union Mutual answered the appeal seeking modification of the judgment. On appeal, the court of appeal amended the judgment to conform to the terms of the Union Mutual policy. This judgment is now definitive. With respect to plaintiff's appeal in the worker's compensation case, the court of appeal, finding no manifest error in the trial court's finding that plaintiff did not sustain a work-related injury, affirmed the judgment dismissing plaintiff's suit.[1] On plaintiff's application, we granted certiorari to review the correctness of that decision.[2]
The record reflects that plaintiff was hired by Borden in 1978 as a process technician. Prior to his employment at Borden, plaintiff had a steady work history. He had worked as a drill press operator, a vehicle assembler, a bus driver and a maintenance man and had completed two years of college. Other than an accidental shotgun wound in 1980, plaintiff testified that he had suffered no injury to his back prior to 1981.
Plaintiff's duties at Borden Chemical sometimes required that he move 55-gallon drums filled with oil. Due to the weight of the drums, it was necessary for him to roll the drums to the desired location and then lift to stand them on end. He testified that while moving an oil drum on May 29, 1981, he felt a sharp pain in his right lower back as he attempted to stand the drum upright. He thought that he had pulled a muscle. The pain was so severe that he had to stop work temporarily. A friend working at a nearby construction site saw the incident and came over to check on him. Plaintiff did not think that the injury was serious at that time. Shortly thereafter, plaintiff began to experience intermittent pains in his back. When the back pains became worse, he went to see the plant nurse on July 30, 1981. She dispensed muscle relaxants and told him that he was probably suffering from a reaction to the 1980 gunshot wound. When the pain continued and moved to plaintiff's legs, he requested more muscle relaxants from the nurse. She refused to give him any more medication and suggested that he see his family doctor.
Holiday had visited Dr. J.P. Patin on June 30, 1981 to have some pellets from the 1980 shotgun wound removed from his hand. He returned on July 7, 1981 to have the stitches removed. At this time, he mentioned to the doctor that he had hurt his back at work. The doctor told him to have it checked if the pain continued. Plaintiff returned to Dr. Patin's office on August 6, 1981, complaining of pain in his right back and right lower leg. Dr. Patin prescribed an analgesic and a muscle relaxant and instructed him to stay home from work and treat the injury with heat and bed rest. When the back pain did not improve, Dr. Patin referred plaintiff to a neurosurgeon. Plaintiff first saw Dr. George Lohmann, a neurosurgeon, on August 24, 1981. Dr. Lohmann testified in deposition that at his initial examination plaintiff could not relate the onset of his back problem to any particular accident. Dr. Lohmann made a tentative diagnosis of possible lumbar disc problems. When plaintiff continued to fail to respond to conservative treatment, Dr. Lohmann performed a myelogram which revealed herniated discs at the L-4 and L-5 levels. Plaintiff underwent a right hemilaminectomy-diskectomy on October 6, 1981 in an attempt to relieve his back pain. This procedure was not completely successful. A CAT scan performed during the summer of 1982 revealed scar tissue, a possible new ruptured disc, and tightness in the bony canal and spinal stenosis. Dr. Kenneth Adatto performed a lumbar fusion on plaintiff's back on September 24, 1982 in a second effort to alleviate the pain. Bone grafts from plaintiff's hipbones were fused along his spine. Plaintiff was hospitalized for two weeks and was required to wear a back brace for six months. Dr. Adatto testified that he now suffers from a permanent functional and anatomical disability of from 20 to 25 percent. He is unable to stoop or bend repeatedly or lift objects weighing over 25 to 50 pounds. He cannot *1383 stand or sit for prolonged periods of time. Due to residual pain in his back, plaintiff also suffers from sleep disorders and fibromyalgia, a pain syndrome of the muscles and thymus tissue.
Plaintiff's last day of work at Borden was August 5, 1981. Borden continued to pay his regular salary for 90 days after he left work. Later Borden refused plaintiff's worker's compensation claim on the ground that his disability did not result from a work-related injury and also contended that plaintiff was not totally disabled. Borden presented evidence at trial that there were jobs available in the Baton Rouge area which conformed to the physical restrictions set by plaintiff's doctors.
The issues presented for our consideration are whether plaintiff's disability was caused by a work-related accident within the meaning of our worker's compensation law and, if so, the extent of his disability and whether or not he is entitled to penalties and attorney fees.
In order to recover benefits under the Louisiana Worker's Compensation Law, an employee must establish that he received a personal injury by accident arising out of and in the course of his employment. Disability is compensable only if it results from a work-related accident. La.R.S. 23:1031.[3]Parks v. Insurance Company of North America, 340 So.2d 276 (La.1976); Gorbach v. Prager, Inc., 310 So.2d 604 (La.1975). An accident is defined in La. R.S. 23:1021(1) as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury." As in other civil suits, the employee in a worker's compensation proceeding has the burden of establishing the disability and causal relation with the employment accident by a preponderance of the evidence. Lucas v. Insurance Company of North America, 342 So.2d 591 (La. 1977). In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979).
Plaintiff's account of hurting his back while lifting an oil barrel on May 29, 1981 was corroborated by the testimony of Wilbert Earl, Jr. Mr. Earl testified that in May of 1981, he was working as foreman on a construction site at Borden. He saw Holiday, who was an acquaintance, attempt to lift an oil drum and then walk away from it. Earl walked over to see what was happening, and Holiday told him that he had "a pulled muscle." Plaintiff mentioned to him several days later that his back was still hurting. The initial pain in plaintiff's back apparently went away. When it returned several weeks later, plaintiff did not at first attribute it to his problems lifting the barrel. When he visited the plant nurse for back pain on July 30, 1981, they discussed whether the back pain was a reaction to the 1980 shotgun wound. However, Ms. Colter, the nurse, testified that plaintiff asked "for something for muscles, pulled muscles." She treated him with muscle relaxants. Both Drs. Patin and Lohmann stated unequivocally that the gunshot wound in no way caused plaintiff's disc problems. Borden presented no evidence to counter this testimony and suggested no other theory as to how plaintiff might have injured his back. Drs. Adatto and Patin testified that it was not uncommon for a patient with a ruptured disc to be unaware of the seriousness of the injury for several weeks. Pain from a ruptured disc develops slowly and often does not occur for several weeks after the event which actually ruptures the disc. Dr. Adatto described the history given by plaintiff as a "classic type" of disc injury.
We find that under the circumstances plaintiff has proved by a preponderance of the evidence that his disability was caused by a work-related accident. We conclude that the trial judge was clearly *1384 wrong in finding otherwise. The court of appeal erred in affirming the judgment of the district court. We must reverse. Since the court of appeal did not reach the issues of disability and penalties and attorney fees, we consider it appropriate to remand the case to that court for it to determine these issues.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the court of appeal for further proceedings consistent with the views herein expressed.
NOTES
[1] 501 So.2d 1090 (La.App. 1st Cir.1986).
[2] 503 So.2d 1009 (La.1987).
[3] Since the injury occurred before the 1983 amendment of the worker's compensation statute, references in this opinion apply to the statutes as they appeared prior to 1983 La. Acts No. 1, § 1.