650 So.2d 333 (1995)
Rita SMITH
v.
RADISSON SUITE HOTEL NEW ORLEANS.
No. 94-CA-626.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1995.
Writ Denied March 30, 1995.
*334 Stanga & Mustian, P.L.C., William R. Mustian, III, Metairie, for plaintiff-appellant.
Hoffman, Sutterfield, Ensenat & Bankston, P.L.C., James M. Taylor, Ann Marie LeBlanc, New Orleans, for defendant-appellee.
Before KLIEBERT, C.J., and GAUDIN and GRISBAUM, JJ.
KLIEBERT, Chief Judge.
Rita Smith appeals a judgment denying her worker's compensation benefits for failure to prove the occurrence of an accident during the course and scope of her employment.
*335 Smith worked for Radisson as a housekeeper cleaning the various suites in Radisson's hotel. Her average weekly wage was $204.80 and the last day that she actually worked at the Radisson Suite Hotel was June 8, 1991. She testified that she had an accident on the morning of June 8, 1991 when she slipped and fell in a bathtub while hanging a shower curtain in a room on the seventh floor of the hotel. She didn't feel hurt at the time and completed her work and continued to work that day. She stated that she requested the front desk to send Gloria Roberts, her supervisor, to the floor where Smith was working. By the time Roberts arrived on the seventh floor, Smith was cleaning the next room on her list. Smith testified that she informed Roberts about her fall and indicated to Roberts that she didn't feel hurt and would continue working. According to Smith, Roberts indicated to her that Roberts would prepare an accident report at lunch time. However, Roberts never prepared the report and despite Smith's efforts to contact Roberts later that day, Roberts left work for the day without preparing an accident report.
Smith returned to work on June 9, 1991. According to her, she was in great pain from the previous day. When she arrived at work, she asked for Gloria Roberts, however, Roberts was not at work. Smith asked Mary Mathews if Roberts had prepared the accident report and Mathews told her she would have to talk to Tim Burkhart. Smith also spoke to Merlene Jones, a supervisor at work. Smith's efforts to reach Burkhart failed. She then left and went to Charity Hospital for treatment. After waiting for two hours, Smith left Charity without seeing a doctor.
On June 10, 1991, Smith saw Dr. Naum Klainer, an orthopedist, who had treated her for back problems in the early 1980's. Smith sustained a back injury in 1982 and had back surgery in 1984. Klainer examined her and advised her to remain off work. On August 2, 1991, Klainer released Smith to light duty work. Smith testified that she has not worked since the accident of June 8, 1991. Smith resigned from her employment with Radisson on August 5, 1991.
Smith's husband testified that his wife told him of the accident on June 8, 1991 when he picked her up from work that day. He further corroborated Smith's testimony about the events of the following day when she attempted to return to work in pain and her attempt to seek medical treatment at Charity Hospital.
Jane Franz, the claims adjustor for the worker's compensation insurance carrier (National Union Fire Insurance Company) testified that the first notice of the claim was received in her office on June 15, 1991. According to Franz's testimony, Gloria Roberts told Franz that Smith had not reported the accident to Roberts. Franz further testified that Smith told Franz that Smith had reported the accident to Roberts after lunch on the day of the accident and that Smith had failed to mention the accident to Dr. Klainer when Klainer examined Smith on June 10, 1991.
Raymond Burkhart, the director of loss prevention at the Radisson Suite Hotel, filled out an accident report on Smith's claim following his telephone conversation with Smith on June 12, 1991. The accident report shows that Smith informed her supervisor of the accident on June 12, 1991. According to Burkhart's testimony, Smith told him that she had forgotten to report the accident on the day it occurred. Burkhart further testified that Smith would have been placed on light duty if she had requested a light duty assignment. According to Burkhart, Roberts told him that Smith had never reported the accident to her.
Gloria Roberts, Smith's supervisor, testified at the hearing that Smith never personally notified her about the alleged accident and that she never discussed the accident with Smith. Roberts' deposition testimony, taken on January 29, 1992 (three months prior to the hearing) was introduced into evidence by the plaintiff. At her deposition, Roberts testified that Smith had told her about the accident three or four days after the accident happened around lunch time on a day that Smith was working.
Dr. Naum Klainer, an orthopedic surgeon, testified by deposition. Klainer had treated Smith for a back injury in 1983. Smith had *336 an anterior lumbar fusion at L4-L5, L5-S1 on June 19, 1984. Klainer had last examined Smith on October 24, 1984 prior to his examination on June 10, 1991. According to Klainer, Smith told him of the slip and fall in the bathroom while hanging curtains. Although Klainer's office notes of June 10, 1991 do not reflect the history of the accident, Klainer admitted that he does not always write down everything his patients tell him. Klainer ordered an MRI on Smith's back which revealed a bulging disk at L3-L4 with some degeneration. According to Klainer, this was a degenerative-type condition and the bulging disc did not impinge the nerve roots. Klainor's diagnosis on Smith was a lumbosacral sprain. Klainer saw Smith again on August 2, 1991 with a recommendation that she try to reduce her activities and to continue with an intermittent use of her back brace. He felt Smith could return to work after the August 2, 1991 visit, with the limitation to try to avoid repeated bending and lifting.
Mary Mathews, the desk clerk supervisor for the Radisson Suite Hotel, testified that Smith told her on June 9, 1991 that Smith's back was hurting and didn't feel good. Mathews stated that Smith did not mention the accident of the previous day to her. She further testified that Smith called three days later to inquire about someone preparing the accident report. At that time, according to Mathews, Smith informed Mathews about the accident. Mathews acknowledged that her job duties did not include filling out accident reports.
As a threshold requirement, a worker in a compensation action must establish "personal injury by accident arising out of and in the course of his employment." LSA-R.S. 23:1031. The applicable statutory definition of "accident" is "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." LSA-R.S. 23:1021(1).
A claimant must prove that a work-related accident occurred. Holiday v. Borden Chemical, 508 So.2d 1381 (La.1987). An accident at work can be proven by a claimant's uncontradicted testimony, corroborated by the medical evidence. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979). Testimony of fellow employees can also corroborate an accident which produces delayed symptoms of serious injury. Holiday, supra. The full consequences of a disabling accident are not always apparent when the injury occurs. Thus, an employee who finishes a day's work without reporting an accident is not barred from receiving compensation.
Louisiana courts consistently have interpreted the work-related accident requirement liberally. Williams v. Regional Transit Authority, 546 So.2d 150, 156 (La. 1989). However, despite the liberal construction of the statute afforded the worker in a compensation action, the worker's burden of proof is not relaxed. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Nelson v. Roadway Express, Inc., 588 So.2d 350 (La. 1991). A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.
In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of *337 manifest error. Bruno v. Harbert International, Inc., et al., 593 So.2d 357 (La.1992).
In our determinations of this case, we are bound by the following principles:
"When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong."
Rosell v. Esco, 549 So.2d 840, 844-45 (La. 1989). (Citations omitted)
The appellate court is not required by the manifest error/clearly wrong principle to affirm the trier of fact's refusal to accept as credible uncontradicted testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles.
The trial court's findings that Smith failed to prove an accident at work were based on her conclusion that no witness could substantiate that Smith told anyone at work about the fall and Dr. Klainer's initial notes did not indicate a fall at work as part of Smith's history. The trial court further decided that the testimony of Gloria Roberts was "completely useless" since her answers at trial and at her deposition were inconsistent. The trial court apparently disregarded Robert's testimony completely.
Based on these findings and our review of the record, we cannot say that the trial court's findings and conclusions were manifestly erroneous. For the reasons assigned, the judgment of the trial court dismissing plaintiff's action is affirmed. Appellant to pay all costs.
AFFIRMED.