| THIBODEAUX, Judge.
In this workers’ compensation case, claimant, Edward Raymond, appeals the judgment of the Office of Workers’ Compensation (OWC) in favor of TNT Sandblasting & Painting, Inc. (TNT), finding that he did not sustain an accident while in the course and scope of his employment. We affirm.
I.

ISSUE

The issue in this case is whether the OWC erred in failing to find the occurrence of an accident.
II.

FACTS

The parties stipulated that Mr. Raymond was employed as a shop hand with TNT in September, October and December of 2001. The parties also stipulated that his average weekly wage rate was $480.00. Mr. Raymond was employed as a painter for TNT. The facts surrounding the occurrence of a work-related accident are in dispute. Mr. Raymond asserts that he sustained an injury resulting from an accident while in the course and scope of his employment. TNT claims that he did not.
Mr. Raymond testified that although he could not remember the exact date, he was first injured sometime after September 11, 2001. Mr. Raymond testified about the occurrence of the first accident as follows:
Well, I could say this, I mean, I was in the shop painting — getting ready to start painting on some pipes and stuff, and I walked out to get some water, that’s when I seen Tommy Vincent pulling in the [blast] hose. So I asked him where he was going with it. So he told me to the 12tanks. So I latched on to the [blast] hose with him and we pulled. I took about ten steps, you know, the [blast] hose got stuck. So I kind of pulled on it, and when I pulled on it, it threw me back.
Mr. Raymond further testified that he took two steps and then felt pain in his lower back. He stated that it felt as though someone had stabbed him with a knife in his back. He also stated that he could not move for about three minutes after feeling the pain so he just stood there. Mr. Raymond testified that the blast hose did not feel heavy when he lifted it.
Mr. Raymond further testified that his foreman was present when he helped pull the hose and saw that he was walking peculiarly. His foreman inquired about his condition and Mr. Raymond testified that he told him about hurting his back. Mr. Raymond took a fifteen minute break. He did not go to a doctor that day for treatment because he thought it was not a serious problem. The pain in his back subsided by the next day. However, subsequent to the accident, every time he picked up anything that was heavy, his back would hurt. When the pain became too severe, Mr. Raymond went to the emergency room at Dauterive Hospital. The emergency room doctor told him that he would have to be seen by an orthopedic doctor. With respect to the emergency room bill, Mr. Raymond told the hospital that TNT would pay. After his hospital visit, Mr. Raymond informed TNT that he had gone to the hospital emergency room. He also informed his employer that he told his foreman, Edmond Fontenot, about injuring himself.
Mr. Raymond testified that TNT decided to send him to see Dr. James Trahan. His first visit with the doctor was on October 3, 2001. After an examination, Dr. Trahan prescribed various medications to treat his pain. Dr. Trahan told Mr. Ray *1223 mond he could return to work, but Mr. Raymond testified that he was still in a lot of pain. He saw Dr. Trahan a total of two times, but decided he wanted a second 1 sopinion because Dr. Trahan insisted that he go back to work even though his pain had not subsided. Mr. Raymond also saw various doctors recommended by his employer, including Dr. Douglas Bernard, but testified that he was still in pain. Mr. Raymond also testified that he injured his back again in early December 2001 while again helping another employee to pull a sand blasting hose.
On cross examination, Mr. Raymond testified that he was not employed by TNT as a sandblaster, but that he injured himself on a sand blasting hose while assisting another employee who was pulling the hose. He admitted that his job duties with TNT did not include pulling sand blasting hoses and was outside of his job duties as a painter. Mr. Raymond testified that he just wanted to help someone who was carrying something heavy. He further testified that Tommy Vincent, a man called “Corey,” and a man named “Anthony” as well as his foreman “Edmond,” were present during the first incident when he injured his back. He testified that he told all of them that he felt a sharp pain in his back. Mr. Raymond testified that his foreman told him to go back to work painting. Mr. Raymond also testified that he did not remember whether he told anyone that his pain was serious.. Even though the pain continued after the first incident in late September or early October and before the second incident in December, Mr. Raymond did not tell Mr. Fontenot, his foreman, that his back continued to hurt. Mr. Raymond continued to work at TNT.
Mr. Raymond’s time sheets reveal that he took two weeks off from work about one month after the first accident. He explained that the two weeks he took off was not due to his injury but because of the death of his brother-in-law. He returned to work in November. Mr. Raymond testified that his second accident occurred at the.end of November and he went to Dau-terive Hospital on December 2, 2001. He stated that although his back never stopped hurting, the pain was not as bad as it had been. |4In the days prior to going to the hospital, Mr. Raymond pulled a sand blasting hose and climbed up and down a ladder of a big tank.
Although Mr. Raymond testified that he told the personnel at Dauterive Hospital that his injuries were work related, the hospital records do not reflect that information. Also, Angela Mayeaux testified that in early September 2001, prior to the hose pulling incident, Mr. Raymond called in stating that he was not going to be able to make it in to work because he hurt his back. She asked Mr. Raymond whether he injured his back at work and he replied that he did not. Ms. Mayeaux never got a call from Dauterive Hospital concerning Mr. Raymond’s visit there. She admitted that Mr. Raymond did not tell her the part of his back that was hurt. Mr. Raymond’s time sheet records indicate that he called in on September 5, 2001 and did not return to work until September 7, 2001. Ms. Mayeaux also noted his reason for wanting to take time off from work.
Mr. Fontenot, Mr. Raymond’s foreman, testified at the hearing. He was Mr. Raymond’s supervisor from July 2001 through approximately late October or early November 2001. Mr. Fontenot testified that Mr. Raymond never told him during working hours that he hurt his back. Mr. Fontenot left to work at another yard temporarily. He returned to Kingston yard, where Mr. Raymond worked, to pick something up and saw that Mr. Raymond was wearing a back brace. Mr. Fontenot *1224 asked Mr. Raymond what happened and he replied that he hurt his back pulling the hose. Mr. Fontenot asked whether he reported the incident and Mr. Raymond replied that he told Tommy Vincent, the foreman at Kingston yard at that time. Mr. Fontenot admitted that Mr. Raymond “was walking funny” when he saw him, but that he was not present when Mr. Raymond hurt his back.
|sMr. Raymond testified that he injured his back while helping Mr. Vincent pull a blast hose. Mr. Vincent testified that there was no occasion when Mr. Raymond helped him pull a blast hose. He further testified that he did not witness Mr. Raymond in obvious pain while working at TNT. Mr. Vincent also testified that when Mr. Raymond first went to work at TNT prior to September 11, 2001, Mr. Raymond told him that he had injured his back at another job and was unable to do any heavy lifting. This was also the reason given by Mr. Raymond to Mr. Vincent for not doing sandblasting work. Mr. Vincent testified that he was under the impression that Mr. Raymond was under the care of a doctor for his back problems, especially since Mr. Raymond told him he was involved in a lawsuit due to injuring his back. However, Mr. Raymond’s testimony was that he had not filed another lawsuit.
Corey Viator, one of Mr. Raymond’s coworkers, also testified. He stated that he started work with TNT about one week after Mr. Raymond started in July 2001. Mr. Viator was employed as a painter/blaster. He testified that one day while working, he asked Mr. Raymond why he did not sand blast and Mr. Raymond replied that he had a bad back. Furthermore, Mr. Raymond told him that it was his lower back area that was bad. Mr. Viator testified that sometimes Mr. Raymond wore a little back brace. Mr. Raymond never told Mr. Viator how he hurt his back. Mr. Robert Grow, a supervisor for TNT, also testified that Mr. Raymond told him he had a back problem and that it did not occur at work.
Mr. Glenn Russo, the owner of TNT, testified that he hired Mr. Raymond to work for TNT. He stated that Mr. Raymond told him that he could only paint and when he first came to work, he was wearing a back brace. Mr. Russo inquired about the condition of his back and Mr. Raymond told him that he had a bad back and that it happened at home. Mr. Russo was aware that at one point, Mr. Grow terminated |fiMr. Raymond’s employment because Mr. Raymond refused to sand blast. However, Mr. Russo also informed Mr. Grow that Mr. Raymond was not hired to blast because of his back problems. The first time Mr. Raymond said anything about hurting his back while working at TNT was in December. He told Mr. Russo he was having back trouble and wanted to see a doctor. Mr. Russo’s response was that he had a back problem from the time he was hired. It was then that Mr. Raymond told him that he hurt his back on the job. Therefore, Mr. Russo sent him to a doctor to get his back checked and offered him light-duty work consisting of sitting down and answering the phone.
Mr. Raymond returned to work for a day or two after seeing the doctor and being released to light-duty work, and then just stopped going to work. With respect to the back brace Mr. Raymond testified that the witnesses who testified about him wearing a back brace when he first started work at TNT were not being truthful and in fact that “they all plotted that.”
A hearing in this matter was held on August 5, 2002. After the presentation of evidence the OWC concluded that Mr. Raymond failed in his burden of proving an accident while in the course and scope *1225 of his employment with TNT. It is from this ruling that Mr. Raymond appeals.
III.

LAW AND DISCUSSION

Standard of Review

An appellate court may not set aside the factual findings of a workers’ compensation judge in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). “[Wjhere there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact |7should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Id. at 844. However, a reviewing court may reverse a fact finder’s determinations if such factual findings are not reasonably supported by the record and are clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).

Occurrence of Accident

“[T]he plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence.” Bruno v. Harbert Int’l Inc., 593 So.2d 357, 361 (La.1992); La.R.S. 23:1031(A). “A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident.” Id. Absent circumstances casting suspicion on the reliability of the worker’s testimony as to the occurrence of an accident and injury while in the course and scope of employment, the trial court should accept as true the witness’s uncontradicted testimony. Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La.1987).
Louisiana Revised Statutes 23:1021(1) defines an accident as:
[A]n unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
As noted in the fact section of this opinion, Mr. Raymond testified that he injured his back while helping to pull a blast hose. He also testified that he refused to do sandblasting work because he would not be paid enough to do both blasting and painting. He later admitted that the real reason he could not do blasting work was Isbecause of a back injury he suffered at home. Although Mr. Raymond testified that several co-workers including his foreman witnessed him in pain after helping to pull a blast hose, those co-workers all testified that they did not see him in pain. In fact, the co-worker Mr. Raymond allegedly helped testified that Mr. Raymond never helped him pull a blast hose. Furthermore, on several occasions when asked about his use of a back brace, Mr. Raymond told his co-workers and his supervisor that he injured his back at home. The emergency room hospital records submitted to corroborate Mr. Raymond’s accident and back injury reveal blanks on the form where it asks “when” and “where” the accident happened.
Dr. Trahan received a history from Mr. Raymond that he injured his back two months prior to December 3, 2001, while pulling an air hose. Mr. Raymond also told Dr. Trahan that he took two weeks off from work due to his back injury. However, at the hearing, Mr. Raymond testified that he took those two weeks off to attend *1226 the funeral of his brother-in-law and to help his wife’s family after the funeral. He informed Dr. Trahan that he did not have any prior back injuries or problems. However, his co-worker witnesses all testified that he had been wearing a back brace from the time he started work at TNT in July 2001 and injured his back at home. Mr. Raymond gave a history of injuring his back in late September but not reporting the injury until “October or so” to Dr. Bernard. Dr. Bernard opined that Mr. Raymond suffered lower back pain but had a lot of “overreaction.” Mr. Raymond’s history of reporting his September injury to Dr. Bernard was contrary to his testimony at trial that he did not report the September injury but reported only the December injury.
We find the record replete with evidence to discredit Mr. Raymond’s testimony about when and where he injured his back. The workers’ compensation judge specifically stated in her oral reasons for judgment that “Mr. Raymond’s | testimony just wasn’t very credible.” We agree and find no manifest error on the part of the OWC.
IV.

CONCLUSION

The judgment of the Office of Workers’ Compensation is affirmed. Costs of this appeal are assessed to claimant-appellant, Edward Raymond.
AFFIRMED.