416 So.2d 335 (1982)
Mr. & Mrs. Hezzie HOLDEN
v.
CLEARVIEW DODGE SALES, INC., et al.
No. 13004.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1982.
Rehearing Denied July 16, 1982.
*336 Mentz & Gorrell, Henry A. Mentz, Jr., Hammond, Simon, Peragine, Smith & Redfearn, Christopher M. Guidroz, New Orleans, for plaintiffs-appellants.
Lobman & Carnahan, Burt K. Carnahan, Metairie, for Clearview Dodge Sales, Inc.
McGlinchey, Stafford & Mintz, William F. Bologna, New Orleans, for Chrysler Corp.
Turner & Young, Emile L. Turner, Jr., New Orleans, for Fleetwood Enterprises, Inc.
Liskow & Lewis, Anne E. Tate, New Orleans, for General Elec. Credit Corp.
Johnston & Duplass, Gary M. Zwain, New Orleans, for Allstate Ins. Co.
Before GULOTTA, GARRISON and BARRY, JJ.
GULOTTA, Judge.
Plaintiffs filed this suit in redhibition following the destruction by fire of their 1978 Dodge Jamboree motor home.
Named as defendants were Fleetwood Enterprises, Inc. (Fleetwood), manufacturer of the coach, Chrysler Corporation, manufacturer of the chassis, and Clearview Dodge Sales, Inc. (Clearview), the dealer-seller.
Petitions of intervention were filed by Allstate Insurance Company (Allstate), the *337 Holdens' casualty insurer, seeking reimbursement for fire insurance proceeds paid to the Holdens, and by General Electric Credit Corporation (GECC), the holder of the Holdens' chattel mortgage and promissory note, seeking the unpaid balance of the purchase price of the vehicle. In a supplemental and amended petition, plaintiffs also seek recovery against Bellefonte Underwriters Insurance Company, Clearview's insurer, based on a claim of negligent repair by Clearview prior to the fire.
Judgment was rendered in favor of the Holdens and against Fleetwood only, for $28,634.26, representing the cost of the vehicle, less unearned finance charges.[1] This amount was reduced by judgments in favor of GECC for $11,387.40, the unpaid balance of the note, and in favor of Allstate for the sum of $11,250.00 on Allstate's intervention in reimbursement for funds paid to plaintiffs for the fire damage. Plaintiffs' net award of $5,996.86 equals the total amount paid on the note by plaintiffs ($1,093.16) plus the value of their trade-in vehicle ($4,903.70), made as a down-payment on the purchase of their motor home. Plaintiffs' claims against Chrysler, Clearview and its insurer, Bellefonte, were dismissed. The trial court later amended the judgment to award plaintiffs attorneys' fees in the amount of $3,750.00 against Fleetwood only, and to set experts' fees at $150.00 for each expert.
Fleetwood, appealing, contends plaintiffs have failed to establish the existence of a defect at the time of manufacture of the vehicle, and are therefore not entitled to recover the return of the purchase price and attorneys' fees. Alternatively, if plaintiffs are entitled to recover, according to Fleetwood, recovery is limited to $12,500.00, the stipulated cash value of the vehicle at the time of the fire.
Plaintiffs, appealing, seek an increase in the amount of attorneys' fees awarded, expenses incurred for expert fees in preparation for trial, and legal interest on their down payment from the date of purchase.
Allstate has answered the appeal, seeking an increase in the judgment in its favor from $11,250.00 to the sum of $12,500.00. GECC has also filed an answer to the appeal, seeking interest stipulated in the note instead of judicial interest awarded by the trial judge. Also, in answer to Fleetwood's appeal, Clearview seeks attorneys' fees against Fleetwood.
Plaintiffs purchased their new motor home from Clearview on September 19, 1978, and took delivery in early October. Except for minor problems, which were corrected by Clearview's service department, plaintiffs operated the vehicle without incident during November.
On December 7, 1978, on a weekend trip, a "flash fire" occurred in a "monitoring panel" in the coach portion of the vehicle. The motor home was returned to Clearview where the burned monitoring panel was replaced and a wire that had been cut by a fastening staple was repaired. The vehicle was returned to plaintiffs in early February, 1979.
The Holdens experienced no further problems with the monitoring panel or the vehicle during limited operation over a ten-day period. However, at approximately 4:30 p. m. on February 14, 1979, Holden connected the vehicle to house current through a "converter" on the mobile home for the purpose of charging the batteries and operating the refrigerator. The converter is designed to convert 110V house current to the 12V motor home current. During the early morning hours of February 15, the motor home was destroyed by fire emanating from the coach area of the vehicle. This suit followed.
In written reasons, the trial judge concluded that the fire was caused by a defect in the "converter" but that plaintiff had failed to prove the defect had existed at the time of the sale. Accordingly, the court awarded judgment under a "products liability *338 theory" rather than in redhibition. The trial judge then awarded plaintiffs the total cost of the vehicle less the refund due them for unearned finance charges.

CAUSATION
It is Fleetwood's contention that the fire emanated from the monitoring panel earlier repaired by Clearview and not from a factory installed defective converter. However, the trial judge found the fire was caused by the defective converter and the record supports that conclusion.
J. Allen Bennett, an expert in the origin and cause of fires, stated the fire had originated in the converter located just above floor level in the left side of the coach portion of the vehicle behind the rear dual wheels. Photographs demonstrate (according to Bennett) a V-shaped burn pattern on the left side of the vehicle that comports with his theory of the converter as the point of origin. This expert saw no evidence to indicate the vehicle's appliances or the monitoring panel[2] contributed to the cause of the fire. According to Bennett, origin of the fire in the monitoring panel would have required a secondary burn through the floor of the vehicle, which was not indicated by the burn pattern.
Emerson G. Wilkinson, a deputy state fire marshal who inspected the vehicle, corroborated Bennett's findings. He testified that the cause of the fire was in the "electrical system" of the coach and that the fire had occurred in the lower area of the left side of the vehicle starting at the plug for the 110V current.
George A. Hero, an electrical engineer, also an expert in cause and origin of fires, was of the opinion that the fire was due to an electrical failure in the coach section of the vehicle because of some wiring defect, "not necessarily when it left the factory but after several repairs." Unlike Bennett and Wilkinson, Hero was of the opinion that the most likely cause of the February, 1979 fire was a recurrence of the December, 1978 fire in the monitoring panel.
Hero's testimony differed from his initial opinion earlier expressed in a deposition where he had concluded that the cause of the fire was in the auxiliary battery charger, which is part of the "converter". Furthermore, in a second pre-trial deposition, Hero had expressed still another opinion that some defect existed in the wiring of the unit when it left the factory and that the water pump was a triggering element that had drawn current to provide an ignition immediately prior to the fire.
When we consider the apparently conflicting expert evidence, we cannot say the trial court erred in concluding that a failure in the converter caused the fire.

REDHIBITION OR PRODUCTS LIABILITY
Fleetwood contends, however, because no showing was made of knowledge of the existence of a defect at the time of sale, plaintiffs are not entitled to attorneys' fees and damages. See LSA-C.C. Art. 2545. According to Fleetwood, the judge erred in his award.
It is true the trial judge in written reasons concluded there was no evidence to support a showing that the converter was defective at the time of purchase. Although he concluded recovery was not in redhibition but in products liability, and did not award attorneys' fees in the original judgment, he did so after granting a partial motion for new trial.
Concerning plaintiffs' entitlement to attorneys' fees, the labeling of plaintiffs' recovery in "redhibition" or in "products liability" appears to be of no significance. According to the well-established rule of Weber v. Fidelity & Cas. Ins. Co., 259 La. 599, 250 So.2d 754 (1971), in a products liability case a manufacturer has the obligation of producing a product reasonably safe for its intended use. A presumption of knowledge of the existence of the defect exists in these cases. In Philippe v. Browning *339 Arms Co., 395 So.2d 310 (1981), on rehearing, the Louisiana Supreme Court, citing Weber, held that a breach of that obligation by the manufacturer entitles the purchaser not only to demand return of the purchase price, but also "to demand all damages caused by the defect and reasonable attorneys' fees" because the manufacturer is "presumed to know of defects in its products...." (Citing LSA-C.C. Art. 2545); Rey v. Cuccia, 298 So.2d 840 (La. 1974). The court stated that "no compelling reason" exists "to require" a person injured by a defective product to proceed either in contract (redhibition) or in tort (products liability).
The effect of the Philippe decision is to make no distinction, from an evidentiary standpoint, between a products liability case and a redhibition case on the question of knowledge of the existence of a defect. The Weber and Philippe cases presume knowledge (whether in redhibition or products liability) where a defect existed. However, LSA-C.C. Art. 2545, under the redhibition articles, appears to require a showing (as distinguished from a presumption) of knowledge. The presumption of knowledge in a redhibition case, pursuant to LSA-C.C. Art. 2530, applies only within three days following the purchase. Nonetheless, as we read Philippe, we conclude the Supreme Court has done away with the difference in the evidentiary requirements, i.e., the presumption of knowledge on the one hand in a products liability case, and the proof of knowledge, on the other hand, in a redhibition case. Therefore, it is of no moment whether the evidence in Philippe[3] established a redhibitory defect and no such showing was made in our case, as claimed by Fleetwood.
Regarding the evidence of the presumption of knowledge of the defect, we point out that although the fire occurred from the defective converter approximately four months after purchase, the converter had been used only for approximately twelve days before the motor home was destroyed. Further, it is undisputed that Fleetwood installed the converter in the manufacture of the coach, and that no repairs were made either by plaintiff or Clearview to the converter at any time subsequent to the sale. Also, no showing was made that the converter was subjected to other than normal use. In the absence of proof that an independent cause resulted in the malfunction,[4] we are led to conclude that a showing has been made that the manufacturer was presumed to have knowledge of the defect and plaintiffs are entitled to attorneys' fees.

PLAINTIFFS' APPEAL
Though not quarreling with the $28,634.26 awarded by the trial judge as restitution of the purchase price and repayment of the expenses of the sale, plaintiffs contend they are entitled to legal interest on the down payment made on the vehicle from the date of the sale. We agree.
According to the reasoning of our brothers in the First Circuit in Purvis v. Statewide Trailer Sales, Inc., 339 So.2d 403 (La. App. 1st Cir. 1976), a plaintiff is entitled to credit for the seller's use of a down payment in order to restore the purchaser to the same position he was in prior to the *340 sale. We are in agreement with that conclusion. Accordingly, we amend the judgment to provide legal interest on the sum of $4,903.05 from date of the sale, September 19, 1978, until paid; however, legal interest on all other sums awarded is to be paid from date of judicial demand.
Plaintiffs also contend that the $3,750.00 attorneys' fee should be increased to the sum of $18,778.75. In support of their argument, plaintiffs have produced extensive and meticulous time and billing records in support of the increase.
Although we are cognizant of the trial court's discretion in determining the amount of the attorneys' fees to be awarded, considering the protracted nature of this particular case, the numerous conferences, the difficulty of the legal questions involved, and the time and effort expended in preparing for and participating in the trial as well as this appeal,[5] we conclude that the amount awarded by the trial judge is inadequate and should be increased to the sum of $9,000.00.
We find no merit, however, to plaintiffs' contention that an additional $1,961.10 should be awarded to J. Allen Bennett for his investigation and testimony concerning the cause of the fire. These expenses were charged by Bennett for work in anticipation of trial. Expenses incurred in preparing a lawsuit are not recoverable as damages. See Acme Steel Company v. A. J. Warehouse, Inc., 212 So.2d 271 (La. App. 4th Cir. 1968); Liberto v. Villard, 386 So.2d 930 (La.App. 3rd Cir. 1980). The trial judge properly disallowed this claim.

ALLSTATE'S APPEAL
We likewise find merit to Allstate's contention that the $11,250.00 judgment in its favor against plaintiffs should be increased to the sum of $12,500.00. It is undisputed that Allstate paid the latter sum to plaintiffs in accordance with the policy provisions and became subrogated to plaintiffs' rights. However, the trial judge erroneously awarded Allstate the sum of $11,250.00.[6]
Accordingly, we increase the judgment in favor of Allstate from $11,250.00 to $12,500.00.

GECC'S ANSWER TO APPEALS
Although contending the $11,387.40 judgment in its favor against plaintiffs should be affirmed in the principal amount, GECC argues the trial judge erred in awarding judicial interest instead of stipulated interest as provided for in the note.
In support of its position, GECC relies on LSA-R.S. 6:958(C) of the Louisiana Motor Vehicle Sales Finance Act, which provides, in pertinent part:
"C. If the maturity of any retail installment contract is accelerated for any reason and suit is filed, the obligation shall be credited with the same refund of the unearned finance charge as if prepayment in full had been made on the date of filing of suit, thereafter the obligation sued upon shall be deemed to bear a finance charge on the amount due not to exceed the rate previously charged on the obligation...."
As we interpret the statute, after the filing of suit, the unpaid obligation sued upon, having been credited with unearned finance charges, "... shall be deemed to bear a finance charge on the amount due not to exceed the rate previously charged on the obligation." Accordingly, we amend the judgment to provide for interest on the *341 amount awarded ($11,387.40) at the rate of 14.5% as provided for in the note and chattel mortgage, from the date of GECC's intervention until paid.

CLEARVIEW'S ANSWER TO FLEETWOOD'S APPEAL
Finally, we find merit to Clearview's claim for attorneys' fees against Fleetwood.
Under the rationale of the Philippe decision, supra, we conclude Clearview, the innocent dealer, is entitled to relief under LSA-C.C. Art. 2545, as if plaintiffs had proved a redhibitory defect. The trial court's finding Fleetwood solely liable to plaintiffs and the dismissal of their claim against Clearview constitute a refusal by the trial judge to impute to the dealer knowledge of the defect. We find no error. Accordingly, we conclude Clearview is entitled to attorneys' fees. See C. T. Boudreaux Lbr. Co. v. Sherrwood Homes, 371 So.2d 326 (La.App. 4th Cir. 1979).
We deem an attorneys' fee award of $5,000.00 to be adequate.

DECREE
For the foregoing reasons, we amend the judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the judgment in favor of plaintiffs, Mr. and Mrs. Hezzie Holden, and against defendant, Fleetwood Enterprises, Inc., in the amount of $28,634.26 is amended to provide that $4,903.05 of this amount shall bear legal interest from September 19, 1978 until paid, and the balance of the judgment shall bear legal interest from date of judicial demand until paid.
It is further ordered, adjudged and decreed that the judgment in favor of plaintiffs, Mr. & Mrs. Hezzie Holden, and against Fleetwood Enterprises, Inc., for attorneys' fees in the amount of $3,750.00 is hereby amended and increased to the sum of $9,000.00, with interest from date of judicial demand until paid.
It is further ordered, adjudged and decreed that the judgment in favor of intervenor, Allstate Insurance Company, and against Mr. and Mrs. Hezzie Holden, in the sum of $11,250.00 is amended and increased to the sum of $12,500.00, with legal interest from date of judicial demand.
It is further ordered, adjudged and decreed that the judgment in favor of intervenor, General Electric Credit Corporation, and against Mr. and Mrs. Hezzie Holden, in the sum of $11,387.40 is amended to provide that the amount awarded shall bear interest at the rate of 14.5% from date of intervenor's judicial demand.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiffs, Mr. and Mrs. Hezzie Holden, and against defendant, Fleetwood Enterprises, Inc. for the increased amount of interest for which Mr. and Mrs. Hezzie Holden have been cast in judgment to intervenor, General Electric Credit Corporation.
It is further ordered, adjudged and decreed that judgment be rendered in favor of Clearview Dodge Sales, Inc. and against Fleetwood Enterprises, Inc., for attorneys' fees in the amount of $5,000.00, with interest from date of judicial demand until paid.
In all other respects, the judgment appealed from is affirmed. All costs of these proceedings are to be paid by defendant, Fleetwood Enterprises, Inc.
AMENDED AND AFFIRMED.
NOTES
[1] $28,634.26 equals the total sale price of $37,698.50 minus $9,064.24 in unearned interest that was included in the price.
[2] The monitoring panel is located at eye level forward of the rear dual wheels on the left side of the vehicle. This panel has water and gas gauges.
[3] Although the Supreme Court decision in Philippe does not indicate how long after the purchase of the shotgun the injury occurred, the court of appeal opinion at 375 So.2d 151 (La. App. 2nd Cir. 1979), states that the shotgun with the defective safety mechanism was purchased in September, 1967 and the injury occurred on February 21, 1976.
[4] See, for example, Segall Co., Inc. v. Rountree Olds Cadillac Co., Inc., 270 So.2d 629 (La.App. 2d Cir. 1972) where defendants' experts testified that an overheating problem in a car probably resulted from the actions of a service station attendant in removing a radiator cap subsequent to the sale and pouring cool water into the radiator, causing the cylinder head to warp. See also, Rankin v. Blanchard, 349 So.2d 968 (La.App. 1st Cir. 1977) where a defect in an alternator pulley on a motor home could not have existed at the time of sale where testimony indicated that the defect was caused by the seller's employees when they improperly tightened the alternator belt over ten months after the sale and expert testimony indicated it would have been impossible for the defect to have existed at the time of sale.
[5] Plaintiffs' attorney introduced a detailed statement of account as an exhibit. It reflects legal services on the case over a two-year period with fees and disbursements in excess of $7,000.00.

Plaintiffs' attorney also retained a New Orleans law firm as co-counsel in this multi-party litigation. According to a proffer of the firm's billing records, the New Orleans firm logged 98.75 hours as of May 12, 1981, the time of trial, for a total fee of over $6,000.00. The record reflects several depositions, and numerous pre-trial hearings attended by both counsel.
[6] The trial court's error apparently arose from the deduction of the sum of $1,250.00 by plaintiffs' attorney as his fee in negotiating settlement with Allstate on the policy. The sum of $11,250.00 was in turn paid to GECC and applied to plaintiffs' unpaid balance of the purchase price of the motor home.