STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-49

DEWAYNE S. EAVES, ET AL.

VERSUS

SPIRIT HOMES, INC., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 199,051
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and
Michael G. Sullivan, Judges.

AFFIRMED.

Fred Andrew Pharis
PHARIS & PHARIS
831 DeSoto Street
Alexandria, LA 71301
Telephone:  (318) 445-8266
COUNSEL FOR:
    Plaintiffs/Appellees - Dewayne S. Eaves and Shirley Stroud

Russell L. Potter
Stafford, Stewart, & Potter
P. O. Box 1711
Alexandria, LA 71309
Telephone:  (318) 487-4910
COUNSEL FOR:
    Third Party Defendants/Appellees - Leslie Roshong d/b/a Arrow
    Mobile Home Movers

**Dana A. Bolton**
**P. O. Box 85480**
**Baton Rouge, LA 70884**
**Telephone:  (225) 295-0502**
**COUNSEL FOR:**
    **Third Party Appellants - Quality Mobile Homes, Inc. and Gregory**
    **D. Lord**

THIBODEAUX, Chief Judge.

DeWayne S. Eaves and Shirley Faye Stroud (Eaves), brought an action for redhibition against the manufacturer, Spirit Homes, Inc., and the sellers, Quality Mobile Homes, Inc. and its owner, Dr. Gregory D. Lord (Quality or Dr. Lord), alleging numerous defects in their newly-purchased mobile home. Dr. Lord, as owner and liquidator of Quality Mobile Homes, Inc., filed a third-party demand against the installers and movers of the mobile home, Leslie Roshong d/b/a Arrow Mobile Home Movers (Arrow), after learning that Arrow had wrecked the home during delivery. An arbitrator found that there were no redhibitory defects at the time of sale; rather, the damages occurred solely as a result of the negligence of Arrow in delivering and installing the mobile home. Pursuant to the findings of the arbitrator, the trial judge rendered judgment against Dr. Lord in the amount of $2,500.00 plus legal interest and costs.

Dr. Lord subsequently paid Eaves a total of $5,248.79 and sought indemnity for that amount from Arrow. Dr. Lord also sought reimbursement of his attorney fees and court costs of $33,902.75 and of his lost income of $6,475.00, as well as his portion of the arbitration fees. Arrow reimbursed Dr. Lord the amount of the original judgment plus legal interest and costs totaling $5,248.79, that Dr. Lord was required to pay to Eaves. However, Arrow asserted in a motion for summary judgment that it was not liable for Dr. Lord's own expenses and costs in the litigation. The trial judge denied Arrow's motion for summary judgment as to the arbitration fees but granted a partial summary judgment finding that Arrow was not liable for Dr. Lord's lost income or his attorney fees and court costs in defending the suit or in bringing the third party demand. It is from this partial summary judgment that Dr. Lord appeals. For the following reasons, we affirm the judgment of the trial court.

## ISSUE

We must decide whether the trial court erred in granting partial summary judgment exculpating the mover/installer, Arrow, for the attorney fees and lost income of the seller, Dr. Lord.

II.

## FACTS AND PROCEDURAL HISTORY

In July 1999, Eaves purchased a new mobile home, or manufactured home, for his mother and himself from Quality Homes, Inc., financing a portion of the purchase price via an installment contract with Quality. The cost of the home with tax was $31,175.00, and the finance charge over the life of the loan was $40,429.00. Eaves' mother, Shirley Faye Stroud, provided the downpayment for the manufactured home and made the installment payments. However, she was not a party to the contracts. The contract of sale included an express warranty and also the delivery and set-up of the home. Quality enlisted the services of Arrow to move and install the home onto the lot of Eaves. However, Quality did not enter into a written contract with Arrow for the delivery of the home, and there was no contract between them for indemnification and attorney fees should the home become damaged during delivery. Arrow was apparently forced off the road while delivering the home to Eaves' lot, and the home sustained damage in transit.

Subsequent to delivery, Eaves and his mother identified numerous defects in the home, including but not limited to dents, bowed walls, offset moldings, nails coming loose, and floors and doors that were not level. Attempted repairs did not resolve the problems. On February 11, 2000, Eaves filed a redhibition suit,

demanding that the sale and installment contracts be cancelled and rescinded. The petition alleged hidden manufacturing defects that existed at the time of sale.

Quality filed an exception of prematurity alleging that Eaves had executed an arbitration agreement and then failed to submit the matter to binding arbitration. Eaves fought the arbitration and various exceptions by the defendants for several years, filing four supplemental petitions. During that time, Dr. Lord liquidated Quality and assumed the debts of the corporation. He also learned through discovery that Arrow had wrecked the home during delivery, causing damage to the home.

Dr. Lord filed a third-party demand against Arrow. Eaves then filed a Fifth Supplemental and Amending Petition adding Arrow as a defendant. However, when the matter was ultimately submitted to binding arbitration, Eaves' claims against Arrow were not submitted, since Arrow was not a party to the contract providing for arbitration.

The arbitrator found that Eaves was the sole purchaser of the manufactured home and that he failed to prove redhibitory defects at the time of sale. The arbitrator further found that the home was damaged during delivery by the sole negligence of Arrow, that the seller, Dr. Lord, was responsible to Eaves for Arrow's negligence, and that the remaining damage could be repaired for not over $2,500.00. The trial court adopted the ruling of the arbitrator, and Dr. Lord subsequently paid Eaves $5,248.79 for the judgment and for Eaves' legal costs. Arrow reimbursed Dr. Lord this amount for Eaves' damages.

Dr. Lord sought further reimbursement and indemnification from Arrow for his lost income of $6,475.00, due to his having to attend a deposition and a four-day arbitration, and for his attorney fees of $33,902.75. Arrow filed a Motion for Partial Summary Judgment asserting that it was liable for only the $2,500.00

judgment awarded to Eaves and against Dr. Lord, and that Dr. Lord could not recover his own attorney fees and other costs absent a contractual agreement or a statutory entitlement. The trial court granted summary judgment in part to Arrow as to Dr. Lord's claims for attorney fees and lost income. The trial court's judgment denied summary judgment to Arrow as to the claims of Dr. Lord for the arbitration fees, expert fees, and judicial interest awarded against Dr. Lord in the arbitration proceedings. The sole issue on appeal is whether the trial court erred in granting summary judgment to Arrow on the issue of Dr. Lord's lost income and attorney fees.

III.

## LAW AND DISCUSSION

### Standard of Review

Appellate courts review grants of summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, that is, whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Ocean Energy, Inc. v. Plaquemines Parish Gov't.*, 04-66 (La. 7/6/04), 880 So.2d 1.

### The Seller's Rights and Obligations

Dr. Lord contends that as the innocent but statutorily responsible dealer or seller, he is entitled to be reimbursed his lost income and his own attorney fees expended in defending against claims resulting from the wrongful acts of Arrow. Dr. Lord argues that Eaves claimed $11,000.00 in repairs to the home and that it was Dr. Lord's attorneys who successfully reduced that figure to $2,500.00. Dr. Lord therefore asserts that he is entitled to indemnification from Arrow for all of his expenses of the litigation. However, Dr. Lord did not have a written contract with Arrow that provided for indemnification and attorney fees.

4

As a general rule, Louisiana law does not provide for the recovery of attorney fees in the absence of a specific statutory provision allowing such recovery or a contractual agreement by the parties to pay attorney fees. *Kinsinger v. Taco Tico, Inc.,* 03-622 (La.App. 5 Cir. 11/12/03), 861 So.2d 669; *Richey v. Moore,* 36,785 (La.App. 2 Cir. 3/7/03), 840 So.2d 1265, *writ denied*, 03-987 (La. 5/30/03), 845 So.2d 1054. *See also, Gen. Motors Acceptance Corp. v. Meyers,* 385 So.2d 245 (La.1980); *LeBlanc v. State Farm Ins. Co.,* 04-1522 (La.App. 3 Cir. 5/26/04), 878 So.2d 715, *writ not considered by*, 04-1642 (La. 10/08/04), 883 So.2d 1023. In the present case, it is undisputed that Dr. Lord merely enlisted the services of Arrow to move and install the mobile home by oral agreement, and that there was no written contract between them. Accordingly, there is no contractual agreement by the parties to pay attorney fees.

The statutes governing the manufacture, sale, and installation of manufactured homes are found at La.R.S. 51: 911.21, et. seq., known as the "Uniform Standards Code for Manufactured Housing." For the protection of the buyer, those statutes currently provide product warranty and licensing requirements for manufacturers, retailers (dealers and sellers), and installers of manufactured homes. However, the statutes underwent revisions pursuant to Acts 2001, No. 718, § 2. In 1999, when Eaves purchased the subject manufactured home from Dr. Lord and received delivery and installation of the home from Arrow, the statutes did not require a warranty by the installer.[1]

---

[1] Following revisions in 2001, La.R.S. 51:911.25 currently provides as follows:

A. Each new manufactured home, sold as such shall be covered by warranties that shall protect only the first retail purchaser of the manufactured home, for a period of one year from the date of the purchase, in accordance with the terms of the warranty:

(1) The manufacturer shall warrant, in writing, that the manufactured home was in compliance with the Code and the requirements of this Part at the time of manufacture.

For purposes of this litigation, the pertinent statutes in the Uniform Standards Code for Manufactured Housing (hereinafter referred to as, "Manufactured Housing Code") are La.R.S. 51:911.24.1 and 51:911.25.

Except for the substitution of "dealer(s)" with "retailer(s)," La.R.S. 51:911.24.1 maintains the same language as it did in 1999, and provides in pertinent part as follows:

> C.   Notwithstanding the terms of any franchise, sales, or other contractual agreement, each manufacturer shall indemnify and hold harmless its retailers against any judgment for damages, including but not limited to court costs and reasonable attorney fees of the retailer, arising out of complaints, claims, or lawsuits including but not limited to strict liability, negligence, misrepresentation, express or implied warranty, or rescission of sale to the extent that the judgment arises out of alleged defective or negligent manufacture, assembly, or design of manufactured homes, parts, or accessories or other functions of the manufacturer, which are beyond the control of the retailer.

Accordingly, the Manufactured Housing Code did and does provide for the seller or retailer, such as Dr. Lord, to receive indemnification or reimbursement of his own attorney fees *from the manufacturer* under certain circumstances. However, this statute does not provide for indemnification including attorney fees

_____

Further, the manufacturer shall warrant that the manufactured home was manufactured free from any defects in materials or workmanship as outlined in the Code.

(2) The installer shall warrant that the manufactured home was installed according to the Minimum Standards for Installation of Manufactured Homes (R.S. 51:912.21 et seq.).

(3) The manufacturer, retailer, or installer shall not be liable for any defect in the manufactured home which is the result of improper setup, moving, or defects in work or materials done or furnished by persons other than the manufacturer, retailer, or installer.

B. Manufactured homes sold as used manufactured homes shall not be covered by a warranty unless provided for in writing outlining the terms and conditions of the warranty.

C. The warranty required by this Part shall be in addition to and not in derogation of any other warranties, rights, and privileges which the buyer may have under any other law or instrument. The buyer may not waive his rights under this Part and any such waiver is hereby prohibited as contrary to public policy and shall be unenforceable and void.

6

*from an installer.* In 1999, the only statute in the Manufactured Housing Code that addressed the acts of the *installer* was La.R.S. 51:911.25 which provided in pertinent part as follows:

> A. Each new manufactured home . . . shall be covered by warranties of the manufacturer . . . .
>
> B. Each such manufactured home sold by a dealer licensed by this state shall be covered by written warranties which shall be furnished *by the manufacturer and the dealer*, which shall obligate them to warrant as a minimum, the following:
>
> > (1) Compliance with standards. The manufacturer shall warrant that the manufactured home complied with the Code and the requirements of this Part . . . .
> >
> > (2) Defects. The manufacturer shall warrant that the manufactured home was manufactured free from any defects . . . and was delivered to the dealer in such condition. Neither the manufacturer nor the dealer shall be liable under the warranty for any defect in the manufactured home which is the result of *improper setup, moving,* or defects in work or materials done or furnished by persons other than the manufacturer or dealer, *unless such setup, moving,* work, or materials were done or *furnished by a person under contract with, or connected by agency with such manufacturer or dealer*. (emphasis added)

> . . . .

Accordingly, under La.R.S. 51:911.25(B)(2), Dr. Lord is liable for the improper moving and set-up by Arrow because, while there was no written agreement between Dr. Lord and Arrow, there was a verbal contract and an agency relationship wherein Arrow was hired by Dr. Lord to move and install the home onto the property of Eaves. Arrow did not contract with Eaves to move and install the home; Arrow contracted with, and was the agent of, Dr. Lord. While La.R.S. 51:911.25(A)(2) currently provides that the installer must warrant to the buyer that the manufactured

7

home was "installed according to the Minimum Standards for Installation of Manufactured Homes (R.S. 51:912.21 et seq.)," there was no such responsibility imposed upon the installer in 1999.

Rather, the statutes appeared to impose a kind of vicarious liability onto the seller who contracts with an installer to move and set up a mobile home in much the same manner as the seller would be liable if his own employee had moved and installed the home. This obligation of the seller who does, after all, profit from the sale, is in keeping with our Civil Code which also provides for the seller's obligations of delivery and warranty: "The seller is bound to deliver the thing sold and to warrant to the buyer ownership and peaceful possession of, and the absence of hidden defects in, that thing. The seller also warrants that the thing sold is fit for its intended use." La.Civ.Code art. 2475.

While there is and was a provision in 1999 in the Manufactured Housing Code that required a *manufacturer* to indemnify a seller for the seller's own losses, La.R.S. 51:911.24.1(C), there was no provision requiring Arrow as the *installer* to indemnify Dr. Lord as the seller or dealer for any damages caused by Arrow. Moreover, while the more recent 2001 revisions require the installer to give a warranty of proper installation to the buyer, the revisions still do not contain a provision directly requiring the *installer* to indemnify the seller. We are not called upon to decide what effect the new requirement for installer warranty might have on a seller's request for reimbursement from the installer. Accordingly, we will leave that for another day. In the present case, Dr. Lord has not asserted any statute that would allow him to recover his own attorney fees and expenses.

Dr. Lord argues that he is entitled to be indemnified for, or reimbursed, his legal fees and lost income because pursuant to *Green v. TACA Int'l Airlines*, 304 So.2d 357 (La.1974), indemnity "shifts the *entire loss* from a tort-feasor only

8

technically or constructively at fault to one primarily responsible for the act that caused the damage." *Id.* at 359 (emphasis added). However, in the *Green* case, the "entire loss" referenced therein was an award to the airline of "full indemnity *for its liability to plaintiffs*." *Id.* (Emphasis added). Accordingly, the "entire loss" referred to the *plaintiff's* losses in damages and attorney fees, not the statutorily liable *defendant's* losses in defending the suit.

The Louisiana Supreme Court in *Nassif v. Sunrise Homes, Inc.,* 98-3193 (La. 6/29/99), 739 So.2d 183, cited the *Green* case and made it abundantly clear that the reference to "entire loss" means the plaintiff's loss. The court stated that "[a]s a general rule, attorney fees are not allowed except where authorized by statute or contract." *Id.* at 185. However, the court distinguished between a defendant's action for his own attorney fees and an action for indemnity, finding that an action for implied indemnity included attorney fees, but only the attorney fees that the defendant third-party plaintiff was bound to pay the original plaintiff. More specifically, the court stated:

> Because Coast [defendant/third party plaintiff] is seeking indemnity for the attorney fees it was compelled to pay Nassif [plaintiff], rather than reimbursement for its own attorney fees, we must begin by examining the basic law of indemnity, and the distinction between an action for indemnity and an action for attorney fees.
>
> Indemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed. *Black's Law Dictionary* 769 (6th ed. 1990); 42 C.J.S. *Indemnity* § 2 (1991). It is based on the principle that everyone is responsible for his own wrongdoing, and if another person has been compelled to pay a judgment which ought to have been paid by the wrongdoer, then the loss should be shifted to the party whose negligence or tortious act caused the loss. 42 C.J.S. *Indemnity* at § 32. The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement. *Id*. at § 29. An implied contract of indemnity arises only where the

9

> liability of the person seeking indemnification is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed. *Bewley Furniture Co., Inc. v. Maryland Cas. Co.,* 285 So.2d 216, 219 (La.1973).

*Id.* at 185.

The *Nassif* court went on to explain the theoretical basis of indemnity as the general obligation to repair the damage caused by one's fault pursuant to La.Civ.Code art. 2315, and the moral maxim that one person should not enrich himself at the expense of another. The *Nassif* court then differentiated between an action for indemnity and an action for attorney fees and stated as follows:

> Applying similar concepts, the Supreme Court of Oklahoma, in *United Gen. Ins. Co. v. Crane Carrier Co.*, 695 P.2d 1334 (Okla.1984), distinguished between an action for attorney fees and an action for indemnity. In that case, the court stated:

> > We therefore hold that where the jury returns its verdict in favor of the defendant third-party plaintiff against the third-party defendant for the full amount of the judgment awarded against the defendant third-party plaintiff, *the defendant third-party plaintiff is not entitled to recover from the third-party defendant the attorney's fees expended in litigating the third-party action for the reason that* **the indemnitee cannot recover attorney fees . . . in the absence of an express contract for such indemnification.**

*Nassif*, 739 So.2d at 186 (quoting *United Gen. Ins. Co. v. Crane Carrier Co.*, 695 P.2d at 1339) (emphasis added). The *Nassif* court agreed with the assessment in the Oklahoma case and held that the defendant third-party plaintiff in *Nassif* was entitled to recover from the third-party defendant the *attorney fees that the plaintiffs recovered from the defendant* under the general rules of indemnity. Accordingly, the court stated:

> [A]n action for indemnity is a separate substantive cause of action, independent of the underlying wrong, and distinct

10

from an action for attorney fees. . . . [T]he equitable principle of restitution applies in an action for indemnity to allow a defendant who is only technically or constructively liable for a plaintiff's loss to recover from the party actually at fault the attorney fees it was compelled to pay the plaintiff, even in the absence of a statute or contract of indemnification. This measure of relief is in accordance with the long standing principle that "[i]ndemnity shifts the *entire loss* from a tortfeasor only technically or constructively at fault to one primarily responsible for the act that caused the damage." *Green v. TACA Int'l Airlines*, 304 So.2d 357, 359 (La.1974) (emphasis added).

*Id*. at 186-87.

Based upon the foregoing, where there was no written contract for indemnity or for attorney fees between Dr. Lord and Arrow, Dr. Lord is entitled to indemnity from Arrow under a theory of implied indemnity which covers only the damages and attorney fees of the original plaintiffs, Eaves, that Dr. Lord was obligated to pay in the main demand. Accordingly, Arrow has reimbursed Dr. Lord the amount of the $2,500.00 judgment in favor of Eaves plus legal costs and interest in a total amount of $5,248.79, and that is all that Dr. Lord is entitled to under the theory of implied indemnity. As for Dr. Lord's claim to attorney fees as special damages which he prayed for in his petitions, there clearly is no contract for attorney fees between Dr. Lord and Arrow, and Dr. Lord cites no statute providing for his reimbursement of his own attorney fees.

Dr. Lord cites *Daigle v. Volkswagen of America, Inc.*, 580 So.2d 722 (La.App. 3 Cir. 1991), and La.Civ.Code art. 2545 for the proposition that the innocent seller is entitled to reimbursement of its own attorney fees and losses associated with defending the suit. In *Daigle*, where the *seller* was found innocent but nonetheless had to prepare for and attend trial, the court ordered the bad faith automobile *manufacturer* to reimburse attorney fees to the good faith seller for the seller's

11

defense against the main demand of the purchaser, for the seller's third party demand against the manufacturer, and for the seller's appeal.

However, *Daigle* is not analogous to the current litigation because the faulty party being sued for attorney fees in the current litigation is the *installer*, not the *manufacturer*. Following a fourth circuit case, the majority in *Daigle* appears to have erroneously based its award of attorney fees on La.Civ.Code art. 2545[2] which provided at the time, and still provides, that a bad faith seller is liable to the buyer for the buyer's attorney fees. However, the issue in *Daigle* involved a good faith seller and reimbursement of attorney fees to that good faith seller. In any event, the concurring opinion in *Daigle* cites La.Civ.Code art. 2531, which at all times pertinent hereto, has provided a remedy *against the manufacturer* for the loss sustained by the good-faith seller. More specifically, the second paragraph of La.Civ.Code art. 2531 provides as follows:

> A seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing, if the defect existed at the time the thing was delivered by the manufacturer to the seller, for any loss the seller sustained because of the redhibition. Any contractual provision that attempts to limit, diminish or prevent such recovery by a seller against the manufacturer shall have no effect.

[2]Prior to the 1993 revision, La.Civ.Code art. 2545 was entitled, "Liability of seller for concealment of vice," and provided that, "[t]he seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages. (Amended by Acts 1968, No. 84, § 1.)." *Smith v. H.J. Landreneau Bldg. Contractor, Inc.,* 426 So.2d 1360, 1362 (La.App. 3 Cir. 1983).

Under the 1993 revision, La.Civ.Code art. 2545 is entitled, "Liability of seller who knows of the defect; presumption of knowledge," and provides that "[a] seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits. A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing."

Accordingly, both La.Civ.Code art. 2531 and La.R.S. 51:911.24.1(C), which text was stated earlier in this decision, provide for reimbursement *from the manufacturer* to the seller of the *seller's* losses in defending against the claims of the buyer under certain circumstances. However, neither the Civil Code article nor the revised statutes imposes a requirement on the *installer* to reimburse the seller for the seller's losses in defending against the claims of the buyer. Article 2531 is further inapplicable in the present case because no redhibitory defects were found.

Dr. Lord also cites *Holden v. Clearview Dodge Sales, Inc.,* 416 So.2d 335 (La.App. 4 Cir.), *writs denied*, 421 So.2d 248, 421 So.2d 249 (La.1982), which was relied upon by the *Daigle* court. However, as in *Daigle*, the issue in *Holden* was the *manufacturer's,* not the installer's, reimbursement to the good faith dealer of the dealer's attorney fees. Accordingly, *Holden* is also distinguishable from the instant case.

As to Dr. Lord's claim for his lost income in the amount of $6,475.00, due to his having to attend a deposition and a four-day arbitration, Arrow cites *Evans v. Century Ready Mix Corp.,* 446 So.2d 860 (La.App. 2 Cir. 1984). There, the court found that lost income due to trial preparation was not an item of damages reasonably contemplated in a sale of the concrete product at issue. More specifically, the *Evans* court found that lost earnings "is but a remote and indirect consequence of the breach of contract and does not fall within the ambit of the reasonable contemplation of the parties as provided in La.Civ.Code art. 1934," relative to offer and acceptance. *Id.* at 862. Under the present set of circumstances, we agree with this assessment.

IV.

## <u>CONCLUSION</u>

Based upon the foregoing, we affirm the judgment of the trial court which granted partial summary judgment to Arrow on the issues of Dr. Lord's attorney fees and lost income. Costs of this appeal are assessed against Dr. Lord.

**AFFIRMED.**