478 So.2d 1364 (1985)
NEW ZION BAPTIST CHURCH
v.
MECCO, INC.
No. CA-3232.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1985.
Jackson and Stovall, James E. Stovall, New Orleans, for appellant.
*1365 White and Lombard, Charles H. White, New Orleans, for appellee.
Before SCHOTT, GARRISON and BYRNES, JJ.
BYRNES, Judge.
By this appeal, Mecco Inc., (Mecco), seeks reversal of a judgment awarding New Zion Baptist Church, (New Zion), $37,809.41 in damages and attorney fees for defective installation of a roof.
In September 1978, Mecco contracted to install a new roof on the New Zion Baptist Church. The roof, of the built-up type, was marketed under the name Ny-Clad. As implied by this name, the roofing system consists of a nylon mesh membrane which covers the roof surface. This membrane is in turn covered with several layers of a compound which completes the system.
New Zion began experiencing leaks in the new roof almost immediately. Pursuant to the warranty provisions of the roofing contract, Mecco was contacted and attempted on several occasions to make the necessary repairs. When the roof still leaked two years later, New Zion consulted an architect who inspected the roof and determined that defective installation was the cause of the continuing problems. Acting on this architect's advice, New Zion had the Ny-Clad roof removed and replaced with a conventional built up roof. There have been no problems with this installation.
It is implied in every building contract that the contractor will perform his task in a workmanlike manner, free from any defects in materials or workmanship. Troy v. Bretz, 399 So.2d 667 (La.App. 1st Cir.1981), C.C. Art. 2762, 2769. To recover damages for breach of this implied warranty, it must be shown that a defect, caused by faulty workmanship or materials, resulted in damage to the plaintiff. Goudeau v. Hill, 410 So.2d 338 (La.App. 4th Cir.1982).
At trial, Mr. Charles Montgomery, the architect consulted by New Zion, testified in great detail concerning which elements of the Mecco installation he considered to be defective. These included failure to properly install the membrane around rooftop air-conditioning supports, failure to provide a continuous membrane, and failure to properly flash and counterflash the interface between the structure and the membrane. Mr. Montgomery's testimony was corroborated by that of Mr. Joseph Spadafora, a roofing expert who also examined New Zion's roof.
Mecco contended at trial that the leaks were caused by defects in the structure which were outside the scope of its responsibility, and plead the contract and warranty provisions as an affirmative defense limiting its liability. In support of its position, Mecco introduced testimony of several of its employees which indicated that an air conditioning plenum chamber and a faulty roof scupper were the source of the leaks.
The trial court, who had the opportunity to observe the witnesses, concluded that the initial installation of the roof was defective and that this condition rendered Mecco liable for the damages suffered by New Zion notwithstanding the limitations of liability contained in the warranty. We agree.
In our opinion the warranty only applies to defects arising from a properly installed roof. To hold otherwise would be to allow Mecco to exempt itself from the consequences of its own defective workmenship when the warranty itself clearly contemplates future problems with a roof that was correctly installed. The only provision, in the warranty which could remotely apply to installation of the roof is clause 4, which reads as follows:
4. MECCO INC. shall not be liable for faulty or improper application of Ny-Clad Roofing System if said system is not installed or applied in accordance with application instructions of MECCO INC. as supplied with said system.
Taken literally, this clause would exempt Mecco from its own negligent installation of the roof. In our opinion such a provision is contrary to public policy. A party to a contract should not be allowed to avoid the consequences of its own negligence. Sandel & Lastrapes v. City of Shreveport, *1366 129 So.2d 620 (La.App. 2nd Cir.1961). This clause might apply if Mecco merely supplied Ny-Clad products to another roofer who did the actual installation. However, that was not the case here. Under these circumstances, we agree with the trial court that the limitations of liability contained in the warranty do not apply.
We have reviewed the extensive testimony found in the record and cannot say that the trial judge was manifestly erroneous in finding that the roof was defectively installed or that rainwater was the source of the leaks. Having found that the roof was improperly installed, it was proper for the trial court to assess the full extent of New Zion's damages against Mecco and not limit liability as provided in the warranty.
Replacement of the defective roof was a proper element of damages in this case, as was the cost of repairing interior water damage caused by the leaks. Hemphill v. Kaltenbach, 276 So.2d 733 (La.App. 3rd Cir.1973). The necessity of replacing the entire roof was proven by the testimony of plaintiff's experts. Interior damages were adequately proven by the testimony of New Zion officials and the introduction of cancelled checks showing the amounts expended on repairs.
Mecco contests the trial court's award $282.48 for photographs of the roof used at trial, as well as the cost of preparing blueprints and making a test cut in the roof. In our opinion, these were costs of preparing the case for trial and as such are not recoverable as damages. Acme Steel Co. v. A.J. Warehouse Inc., 212 So.2d 271 (La.App. 4th Cir.1968).
We affirm the award of $1,020.00 to the Mathes Group for the services rendered by Mr. Montgomery and Mr. Spandafora. These two men testified as expert witnesses for New Zion and it was within the trial court's discretion to determine an appropriate fee and assess that fee against Mecco. La.R.S. 13:3666. The ruling of the trial court in such matters should not be disturbed on appeal unless it represents a serious abuse of discretion. Pike v. Stephens Imports Inc., 448 So.2d 738 (La.App. 4th Cir.1984). While the judge's award in this case may be somewhat high, we cannot say that it is an abuse of discretion and therefore leave it undisturbed except to note that it should be taxed as a cost of trial and not included as an element of damages.
However, the trial court clearly abused his discretion by assessing $7,500.00 in attorney fees against Mecco. In the absence of an express law or contractual provision, attorney fees are not a proper element of recovery. Martin v. A.A.A. Brick Co., Inc., 386 So.2d 987 (La. App. 3rd Cir.1980). There is no express law which provides for attorney fees in this case and the contract is silent on this issue. Thus, it was error for the trial court to assess attorney fees against Mecco.
For the foregoing reasons, the judgment of the trial court is amended to award New Zion $28,834.00 in damages, plus interest and court costs. The fees of the expert witnesses employed from Mathes Group are fixed at $1,020.00 and taxed against Mecco as a cost of trial. The award of attorney fees is reversed. Costs of this appeal are to be borne by appellee.
AMENDED IN PART AND REVERSED IN PART.
SCHOTT, J., dissenting in part.
SCHOTT, Judge, dissenting in part:
I do not believe the plaintiff proved entitlement to the amount of damages allowed by the majority in the amount of $28,834.00. This figure consists of the following:

Contract price paid to
 Mecco $9,328.00
Cost of Removing Roof 5,506.00
Painting 5,000.00
Plastering 9,000.00
 __________
 $28,834.00

There is no evidence to support the item of removal of the roof. Montgomery testified that he recommend removal because the weight of the roof was forty pounds per square inch while the City Code specified twenty. The trial judge had the impression *1367 that this was a maximum allowable load (transcript pages 115, 118). The testimony was there was a minimum of twenty pounds (page 72) to accommodate wind stresses (page 73), but there is no limit specified by the city code. The maximum depends on the strength of the structure (page 117, 118) and Montgomery made no study of this structure's strength (119). The weight of the roof had nothing to do with the leaks (119). Furthermore, a reading of Montgomery's testimony as a whole convinces me that much of the leaking resulted from conditions having nothing to do with Mecco's work such as the air conditioning plenum and scuppers and that the leaks could have been remedied without removing the roof. Thus, the record does not support the award for $5,506.
The majority allows plaintiff to recover $9,000 for plastering. Yet the record is clear to the effect that much of the damage to the plaster was the result of leaks not related to Mecco's work.
I would reduce the recovery.