844 So.2d 412 (2003)
Gary PATTERSON
v.
ALEXANDER & HAMILTON, INC.
No. 2002 CA 1230.
Court of Appeal of Louisiana, First Circuit.
April 2, 2003.
*413 Larry W. Buquoi, Craig Kimball, Prairieville, Counsel for Plaintiff/Appellee Gary Patterson.
Paul Eckert, Metairie, Counsel for Defendant/Appellant Alexander & Hamilton, Inc.
Before: KUHN, DOWNING and GAIDRY, JJ.
DOWNING, J.
This appeal addresses whether Alexander & Hamilton, Inc. (Alexander & Hamilton) wrongfully failed to pay commissions and a bonus that Gary Patterson claims to have earned. The trial court agreed that Alexander & Hamilton owed the commissions and found it to be in bad faith in failing to pay Patterson. The trial court entered judgment awarding Patterson his commissions and bonus, penalty wages, attorney fees, interest and costs. For the following reasons, we affirm the judgment of the trial court.

*414 FACTS AND PRODEDURAL HISTORY
Gary Patterson began working for Alexander & Hamilton on October 27, 1997 as a sales associate in their commercial recovery and information service business. His compensation plan included a base salary, commissions on credit sales and bonuses if he met certain sales thresholds.[1] Between May 1, 1999 and May 24, 1999, Patterson placed orders from which Alexander & Hamilton ultimately collected $36,250.00. On May 24, 1999, however, the company owner and president, Mr. Andrew Weir, informed Patterson by memorandum that since he was in default of minimum performance standards, he would be on probation for 90 days. During that time, the memorandum states, he would be ineligible to receive further bonuses, would not qualify for vacation pay, but would receive his base salary.
Subsequently, Alexander & Hamilton refused to pay Patterson any commissions or bonus for the orders he procured in May 1999 prior to receiving the memorandum, asserting that the sales were not complete until the billings had been collected. Therefore, it contended that Patterson was not entitled to commissions or a bonus even though he had procured orders prior to May 24, 1999.
Alexander & Hamilton terminated Patterson's employment on July 5, 1999. It mailed his final paycheck for his base pay on July 13, 1999. It has yet to pay the commissions and bonus Patterson claims are due.
In November 1999 Patterson filed a petition for damages and past due wages in Ascension Parish Court. Alexander & Hamilton filed an exception of improper venue, which the trial court overruled. Alexander & Hamilton applied for supervisory writs on this issue, which this court denied on November 6, 2001.
After a trial on the merits, the trial court entered judgment in favor of Patterson awarding him his claimed commission wages of $3,957.50 and his bonus of $300.00. And after finding Alexander & Hamilton in bad faith, the trial court further awarded Patterson 90 days penalty wages of $15,097.50 and attorney fees of $6,444.35. It also awarded Patterson interest and costs.
Alexander & Hamilton appealed raising seven assignments of error after generally alleging: 1) that the trial court erred in concluding that the Parish Court of Ascension Parish was a place of proper venue; 2) that the trial court erred in rendering judgment for Patterson in that it ignored evidence of Alexander & Hamilton's established procedures in calculating and awarding commissions and bonuses; and 3) that the trial court erred in finding Alexander & Hamilton in bad faith for failure to pay Patterson his claimed commissions and bonus and, therefore, erred in awarding penalties and attorney fees pursuant to its incorrect interpretation and application of La. R.S. 23:631 and La. R.S. 23:632.
Patterson answered the appeal seeking additional attorney fees for time expended in connection with this appeal.

*415 DISCUSSION

VENUE[2]
On June 20, 2001, the trial court denied defendant's venue exception, and a judgment was signed to this effect on June 21, 2001. Defendant did not appeal the judgment. Rather, it sought supervisory writs on July 10, 2001. The trial court granted a return date for the writ application of September 24, 2001, and on November 6, 2001, this court denied the writ without explanation. Alexander & Hamilton took no further steps to effect a review of this decision, but instead proceeded to trial.
The overruling of a declinatory exception of improper venue is generally considered an appealable judgment because, although it is interlocutory (i.e., it does not determine the merits but only preliminary matters in the course of the action. See La. C.C.P. art. 1841), it may cause irreparable harm. See La. C.C.P. art.2083; see also A & P Boat Rentals, Inc. v. American Lloyd's, 592 So.2d 1361, 1364 (La.App. 1 Cir.1991). In Herlitz Construction Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878, 878 (La. 1981), the court noted that irreparable injury occurs if any ruling cannot, as a practical matter, be corrected on appeal. An example of this irreparable harm is when the trial court overrules an exception to venue and the case is tried on the merits in the wrong venue. See also Chambers v. LeBlanc, 598 So.2d 337 (La.1992). A judgment denying an objection of improper venue therefore causes irreparable injury since the appellate court has no practical means of correcting the error on appeal after a trial on the merits. Id. See also Greater Lafourche Port Commission v. Louisiana State Civil Service Commission, 481 So.2d 745 (La.App. 1 Cir.1985).
Appellate courts have no practical means of correcting an improper venue ruling on appeal after a judgment pursuant to trial. See Herlitz, 396 So.2d at 878 (La.1981). Accordingly, when a party does not exercise its right to appeal from an adverse judgment on improper venue, the party waives reasserting the venue issue. Bamburg Steel Buildings, Inc. v. Lawrence General Corp., 36,005, p. 4 (La.App. 2 Cir. 5/8/02), 817 So.2d 427, 431.
Here, Alexander & Hamilton sought no further review from this court or the Louisiana Supreme Court after this court denied its writ application. Alexander & Hamilton does not assert, and there is no evidence to support, any allegation that it did not receive a fair trial in the Parish Court of Ascension Parish. Accordingly, Alexander & Hamilton cannot here reassert its arguments regarding improper venue. We, therefore, decline to reconsider the merits of this assignment of error.

COMMISSIONS AND BONUS
Alexander & Hamilton argues that Patterson was not entitled to an award representing commissions and a bonus for sales between May 1, 1999, and May 24, 1999, because they were not earned until Patterson's orders were billed. Accordingly, it argues that pursuant to the memorandum of May 24, 1999, after which date these orders were billed, Patterson was not entitled to receive any commissions or bonuses. It points out that under the express terms of its compensation plan, all commissions and bonuses are at its will and may be abolished at its sole discretion. In so arguing, Alexander & Hamilton contends that its established policy, and the *416 policy of the entire collections industry, is that commissions and bonuses are based on actual billing and not upon placement of orders. It provided only the testimony of its own management employees to support this contention. Alexander & Hamilton's arguments suggest that the concept of "employment at will" also means "compensation at will." It does not.
Under La. C.C. art. 2456, a sale is complete "between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid," and Alexander & Hamilton has the burden to show the sales obligation has been modified. See La. C.C. art. 1831.
The parties appear to dispute the meaning of the term "sales," and the only definition appears in Patterson's compensation plan: "[C]lient service sales are defined as all house accounts or clients initially developed by a current or former employee of Alexander & Hamilton or referred to Alexander & Hamilton by a current of former client of Alexander & Hamilton;" "primary sales are defined as any sales to individuals or legal entities not falling within the definition of client service sales." Even so, Alexander & Hamilton points to no document or other evidence, and we can find none, authorizing it to withhold commissions and bonuses once Patterson had procured a purchase and such sale had been billed. As the trial court correctly observed, "Nowhere in Exhibit # 1 does it say commissions are earned at the time of billing." Even if there were such a provision, persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity. La. C.C. art. 7. Accordingly, any such provision would need to be scrutinized for compliance with La. R.S. 23:631,[3] which is designed to protect the public interest. See Becht v. Morgan Building & Spas, Inc., 01-1091, p. 3 (La.App. 1 Cir. 6/21/02), 822 So.2d 56, 58.
"When commission sales are at issue, the inquiry of whether a wage was actually earned focuses on what work associated with the sale remained at the time of [termination]." Becht, 01-1091 at p. 5, 822 So.2d at 59. Where only collection of the fee is outstanding and collection is beyond the control of the employee, the employee has earned his commission pursuant to La. R.S. 23:634.[4]See Howser v. Carruth Mortgage Corp., 476 So.2d 830, 834-835 (La.App. 5 Cir.1985). However, if a substantial amount of time and effort are *417 needed to complete a sale, then the right to a commission may not have been earned. Howser, 476 So.2d at 835. From the evidence in the record, it appears that collection of the contract amounts was the only outstanding work remaining to complete the sales on orders made between May 1, 1999, and May 24, 1999. We note that Patterson seeks commissions and a bonus only for amounts actually billed and paid.
Accordingly, the trial court did not err in concluding that Patterson had earned his claimed commissions and bonus. Alexander & Hamilton's assignments of error in this regard are without merit.

PENALTIES AND ATTORNEY FEES
In awarding wage penalties and attorney fees, the trial court found two violations of La. R.S. 23:631 A.[5] It found that Alexander & Hamilton failed to mail Patterson's final check within three days of termination as required by the statute. And it found that Alexander & Hamilton was in bad faith when it disputed Patterson's entitlement to his commissions and bonus.
Regarding the mailing of his paycheck upon termination, the trial court found that Patterson was terminated on July 5, 1999, that the check should have been mailed by July 8, 1999 pursuant to his request, and that the check, per its postmark, was not mailed until July 13, 1999. These findings are supported in the record and are not manifestly erroneous.
Regarding the payment of Patterson's commissions and bonus, the trial court found Alexander & Hamilton's actions to "clearly indicate bad faith" in failing to pay these. The trial court found that Alexander & Hamilton contrived an excuse to fire Patterson, toward whom Alexander & Hamilton's president, Andrew Weir, exhibited "a great deal of animosity." The trial court found Alexander & Hamilton's interpretation of the compensation plan to be untenable. It observed that under Alexander & Hamilton's theory, any employer could fire any employee at will just to avoid paying commissions and bonuses by claiming they were not earned until billed. The trial court further observed that nothing in the documentation provided that commissions were only earned at the time of billing.
*418 Alexander & Hamilton claim that no penalties or attorney fees are due because there was a good faith dispute between it and Patterson over the interpretation of when Patterson was entitled to commissions and bonuses. See La. R.S. 23:631 B. The trial court could not impose sanctions and attorney fees under La. R.S. 23:632[6] if Alexander & Hamilton had not paid the commissions and bonus based on a good faith dispute. Here, however, the trial court found as a fact that Alexander & Hamilton acted in bad faith in refusing to pay Patterson's commissions and bonus. This finding is supported by the evidence and was not manifestly erroneous.
We observe that La. R.S. 23:632 requires a penalty of the lesser of 90 days wages or full wages between demand and tender for Alexander & Hamilton's failure to comply with La. R.S. 23:631. Here, the record reflects that Patterson made demand no later than August 12, 1999, and the commissions and bonus remain unpaid. The trial court, therefore, did not err in assessing a penalty of 90 days wages against Alexander & Hamilton.
Louisiana Revised Statutes 23:632 also provides for the award of attorney fees in a "well-founded suit for any unpaid wages whatsoever." Here, counsel for Patterson documented and demonstrated almost 90 hours work in connection with the preparation and trial of this matter. Counsel also introduced as evidence its contingency fee contract with Patterson in which they were to be paid one-third of any recovery. Thus, the trial court's award of attorney fees, almost equaling one-third of the award, was not an abuse of discretion.
Accordingly, Alexander & Hamilton's assignment of error asserting that the trial court was manifestly erroneous in finding it to be in bad faith is without merit. In addition, Alexander & Hamilton's assignment of error asserting that the trial court misapplied La. R.S. 23:631 and La. R.S. 23:632 is also without merit.

ANSWER TO APPEAL

ATTORNEY FEES ON APPEAL
Patterson requests that this court grant additional attorney fees for the expense of litigating this appeal. In wage disputes involving La. R.S. 23:631, "additional attorney's fees are usually awarded when a party appeals, obtains no relief, and the appeal has necessitated additional work on the opposing party's counsel." Becht, 01-1091 at p. 5, 822 So.2d at 59. Here, the extra work on appeal necessitated by Patterson's counsel is evidenced by their skillful preparation of their briefs and their oral argument. Thus, we award $2,500.00 to Patterson as additional attorney fees.

DECREE
The judgment of the trial court is affirmed. We award $2,500.00 in favor of Gary Patterson and against Alexander & Hamilton as additional attorney fees for *419 the prosecution of this appeal. Costs are taxed to Alexander & Hamilton.
AFFIRMED.
KUHN, J., concurs.
NOTES
[1] Under the plan Patterson would receive a base salary of $2,000.00 per month and 15% commission on the pertinent sales, subject to a $10,000.00 threshold. The plan also gave Patterson a $300.00 bonus for the first month he achieved $20,000.00 in billings, which bonus could rise to $1,000.00 per month if he achieved sales exceeding this amount in successive months. The plan also provided that all bonuses and commissions were at the will and sole discretion of the employer and could be abolished or modified without written notice.
[2] Patterson has filed a motion to this court to strike's argument regarding venue. Because we address this issue, we deny the motion to strike.
[3] See infra note 4.
[4] La. R.S. 23:634. Contract forfeiting wages on discharge unlawful

A. No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
B. Nothing in Subsection A of this Section or in R.S. 23:631(A) shall prohibit an employer from requiring an applicant for employment who becomes an employee or an employee, provided the employee is compensated at a rate equivalent to not less than one dollar above the existing federal minimum wage and is not a part-time or seasonal employee as defined in R.S. 23:1021, to sign a contract providing that the costs of such individual's preemployment medical examination or drug test may be withheld from his wages if he resigns within ninety working days from his first day of work, and, upon resignation, withholding such costs, unless such resignation is attributable to a substantial change made to the employment by the employer as applied in the Louisiana Employment Security Law.
[5] La. R.S. 23:631 was amended by Acts 2001, No. 1171. At all pertinent times the statute provided in pertinent part as follows:

§ 631. Discharge or resignation of employees; payment after termination of employment
A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge.
(2)Payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
. . . .
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.
[6] La. R.S. 23:632. Liability of employer for failure to pay; attorney fees

Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a wellfounded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.