STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-1069


GALLOWAY JEFCOAT, LLP

VERSUS

D. PATRICK ("RICK") KEATING


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20110985
HONORABLE JOHN DAMIAN TRAHAN, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and J. David Painter, Judges.


AFFIRMED, AS AMENDED.


Leslie J. Schiff
Schiff, Scheckman & White LLP
P. O. Box 10
Opelousas, LA 70571-0010
(337) 942-9771
COUNSEL FOR DEFENDANT APPELLANT:
    D. Patrick ("Rick") Keating

**Lamont Paul Domingue**
**Hoai T. Hoang**
**Voorhies & Labbé**
**P. O. Box 3527**
**Lafayette, LA 70502-3527**
**(337) 232-9700**
**COUNSEL FOR PLAINTIFF APPELLANT:**
**Galloway Jefcoat, LLP**

**SAUNDERS, Judge.**

This case involves a dispute over the division of attorney's fees between a bankruptcy attorney and a firm. The bankruptcy attorney, with a practice established prior to his employment with the firm, was later terminated by the firm for what it deemed improper retention of fees collected by the attorney.

The firm filed suit against the attorney for recovery of the fees and its damages suffered as a result of having to reallocate the time of salaried employees to investigate the activities of the attorney in representing its clients. The attorney reconvened against the firm for fees or for the monthly bonus that he contended entitlement to under his employment agreement.

The trial court's judgment awarded the firm fees that it deemed were improperly retained by the attorney, but involuntarily dismissed the firm's claim for damages suffered for reallocation of the time of its salaried employees. Both the attorney and the firm appeal. We amend the trial court's judgment to reflect the attorney's entitlement to his percentage of the fees from one particular client as mandated by the employment agreement. We affirm the trial court's judgment as amended.

## FACTS AND PROCEDURAL HISTORY:

This matter arises from the employment of D. Patrick "Rick" Keating (Keating) with Galloway Jefcoat, LLP as an associate bankruptcy attorney from October 1, 2007, through October 10, 2010. The relationship between Keating and Galloway Jefcoat and how Keating was to be paid was governed by an employment agreement.

After terminating Keating, Galloway Jefcoat filed suit against him contending that he improperly converted attorney's fees. In addition to the return of those fees, Galloway Jefcoat sought damages from Keating for the time its

salaried employees spent investigating this matter in lieu of performing their typical job duties. Keating did admit to retaining the fees acquired from some of the clients, but asserted that he did so either due to mistake or a belief that those clients were part of his book of business that existed prior to his employment at Galloway Jefcoat.

Prior to the trial pertinent to this appeal, a hearing was conducted by the federal bankruptcy court in Lafayette, Louisiana. The purpose of that hearing was to determine which fees held by the bankruptcy court would be disbursed to either Galloway Jefcoat or Keating. The bankruptcy court divided a portion of the fees based on the date of the confirmation order because it found that neither party provided it with enough evidence to divide the fees using a quantum meruit basis. Further, the bankruptcy court asserted that its division should have no weight in the matter before the trial court.

During the pertinent trial, at the close of Galloway Jefcoat's presentation of evidence, Keating moved for an involuntary dismissal of, *inter alia*, Galloway Jefcoat's claims related to the damages sought for the time its salaried employees spent investigating the matter. The trial court granted Keating's motion.

After hearing the remainder of the case, the trial court took the matter under advisement. Thereafter, it rendered a judgment in favor of Galloway Jefcoat for $53,147.68 on its main demand and in favor of Keating for $5,391.65 on his reconventional demand. Keating filed a motion for a new trial. After hearing the motion, the trial court modified its original judgment to increase the award to Keating to $6,295.90. Both parties appealed, alleging the following assignments of error, respectively.

**KEATING'S ASSIGNMENTS OF ERROR:**

I.

2

The Trial Court erred in ordering Keating to compensate Galloway Jefcoat, LLP for amounts received from Leonard Gachassin ($500.00) and OIS ($1,925.00). These amounts are accounts receivable by Keating for work which he did before he joined the firm as an employee. Therefore, there was no entitlement or any indication of entitlement of Galloway Jefcoat to these fees.

## II.

The Trial Court erred in failing to recognize the interest of Keating in Bankruptcy funds held by the Chapter 13 Trustee, Keith Rodriguez. As of the time of Keating's termination numerous Chapter 13 bankruptcy cases had been completed. Under Chapter 13 rules, the Chapter 13 trustee continues to collect funds paid by the Chapter 13 debtors included in which are fees due for the debtor's attorney. Trustee Rodriguez held funds which were ordered by the Bankruptcy Judge to be paid to Keating and to the firm. These funds were ordered by Bankruptcy Judge Summerhays to be distributed $47,777.50 to Galloway Jefcoat and $22,476.81 to Keating. The division was made by Judge Summerhays on a case by case basis. The Trial Court adopted the division made by Judge Summerhays. Judge Summerhays clearly ruled that the division was not intended to bind the State Court determination on entitlement of fees from these Chapter 13 matters. Judge Trahan erred in accepting the division of Judge Summerhays as his division without analyzing the issues relating to entitlement as urged by Keating.

## III.

In Construction Resources Link (CRL), a Chapter 11 proceeding and a GJ file, the work was completed before termination of DPK. After termination, GJ received fees totaling $7,255.15. The Trial Court erred in refusing to recognize DPK's entitlement to 75% or $5,441.36 of the CRL fee.

## IV.

The Trial Court erred in awarding fees claimed by Keating derived from cases in his book of business to Galloway Jefcoat. The cases in Keating's book of business were never acquired by Galloway Jefcoat. There was no entitlement legally, ethically or otherwise to those fees when the work was completed and the fees were paid to Keating. Keating contends that he is solely entitled to those fees. Judge Trahan erred in his ruling and judgment ordering Keating to disgorge his book of business fees to Galloway Jefcoat. As an alternative assignment of error, if the fees are to be disgorged, then clearly a recalculation should be done because under the terms of employment, even if these fees are determined by the Court to be Galloway Jefcoat fees, Keating would be entitled to 50% of the fees

3

under his employment agreement on Chapter 7 and Chapter 13 matters and 75% of the fees derived from Chapter 11 matters.

## GALLOWAY JEFCOAT'S ASSIGNMENT OF ERROR:

The trial court erred in granting Involuntary Dismissal of Galloway Jefcoat, LLP's investigative costs, particularly the time and labor expense incurred by its employees in identifying, documenting and establishing the wrongful acts of its former employee, D. Patrick "Rick" Keating.

## KEATING'S ASSIGNMENT OF ERROR NUMBER ONE:

Keating asserts that the trial court erred in ordering him to compensate Galloway Jefcoat for amounts received from Leonard Gachassin and OIS. We disagree.

The applicable standard of review for this assignment of error was not addressed by Keating. He simply argued that the trial court erred because it was his uncontradicted testimony that the payments from Gachassin and OIS were to compensate him for work he performed prior to joining Galloway Jefcoat.

The standard of review was addressed by Galloway Jefcoat. It asserted that the manifest error standard of review was applicable to this assignment of error because the trial court ruled as it did based on a finding that Keating lacked credibility.

In *Ardoin v. Firestone Polymers, L.L.C.*, 10-245, pp. 6-7 (La. 1/19/11), 56 So.3d 215, 219, the supreme court stated:

> [T]he fact-finder "should accept as true a witness's uncontradicted testimony, although the witness is a party, absent 'circumstances casting suspicion on the reliability of this testimony.'" [*Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357,] at 361 [(La.1992)] (quoting [*West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146, 1147 (La.1979)], and citing *Holiday v. Borden Chemical*, 508 So.2d 1381, 1383 (La.1987)). The fact-finder's determinations as to whether the worker's testimony is credible and whether the worker has discharged his burden of proof are, most certainly, factual determinations that should not be disturbed on appellate review unless clearly wrong or manifestly erroneous. *Id.* (citing *Gonzales v. Babco Farm, Inc.*, 535 So.2d 822, 824 (La.App. 2d Cir.), *writ denied*, 536 So.2d 1200 (La.1988)).

4

In the assignment of error before us, Keating's testimony that Gachassin and OIS were his clients and the checks received from them were solely for work he performed prior to his employment at Galloway Jefcoat is uncontroverted. However, the trial court found Keating to lack credibility on whether a client was a Galloway Jefcoat client or his own. In its reasons for ruling, the trial court stated:

> If Keating had treated all former clients and cases in a consistent manner, the Court would be more inclined to accept Keating's explanation . . . . There was, however, little consistency. There are some clients that he had been working with over a long period of time for whom he opened a G&J file and others for whom he did not open files. If he kept fees, he would say that the case was in his book of business. If confronted with a similar situation where he did open a G&J file, he would say he made a mistake; the file should have been a Keating file.

We find ample evidence in the record to support the trial court's finding that Keating was not credible when asserting which clients were from his self-described book of business prior to his employment with Galloway Jefcoat. The record contains eleven clients where Keating filed Chapter 7 bankruptcies prior to his employment with Galloway Jefcoat and later converted those Chapter 7 bankruptcies into Chapter 13 bankruptcies after he began his employment with Galloway Jefcoat. Keating kept all the fees paid to him and did not open a Galloway Jefcoat file for three of those eleven clients. His explanation was that the three clients were in his book of business. At trial, Keating was asked why the other eight clients had a file opened at Galloway Jefcoat and why the fee arrangement between he and Galloway Jefcoat was applied to the fees paid by those eight clients. Keating responded that a mistake was made in all eight of those situations and none of those eight clients should have had a file opened at Galloway Jefcoat.

We, like the trial court, find Keating's explanation lacking. At various times throughout his employment, those eight clients were listed by name on the monthly report used to calculate whether Keating was entitled to his incentive bonus. Had any of their files been opened mistakenly as Keating contends, he almost certainly would have noticed the mistakes and requested that they be corrected.

As such, despite Keating's uncontroverted testimony that Leonard Gachassin and OIS were clients in his book of business, the trial court was not manifestly erroneous in finding that Keating's testimony lacked credibility in this regard. Given the reasonableness of this finding, we will look to the record to review whether it supports the trial court ordering Keating to compensate Galloway Jefcoat for amounts received directly from Gachassin and OIS.

The check at issue from Gachassin was dated November 8, 2007, five weeks after Keating began his employment with Galloway Jefcoat. Likewise, the check from OIS was dated December 10, 2008, more than fourteen months after Keating's employment with Galloway Jefcoat ensued. We acknowledge that the work performed to acquire either of these checks may have occurred prior to Keating commencing employment at Galloway Jefcoat, especially those from Gachassin. However, we cannot say the trial court's order requiring Keating to compensate Galloway Jefcoat for the amounts received directly from Gachassin and OIS was unreasonable. Both checks were dated after Keating began working for Galloway Jefcoat. The trial court found that Keating presented no credible evidence that the work performed for Gachassin and/or OIS entitled him solely to the fees. Likewise, Keating has pointed to no evidence in the record on this appeal, other than his testimony, in furtherance of carrying his burden to prove that the trial court was manifestly erroneous in ordering him to compensate Galloway

6

Jefcoat for the fees he collected from Gachassin and OIS. Accordingly, we find that this assignment of error is without merit.

**KEATING'S ASSIGNMENT OF ERROR NUMBER TWO:**

Next, Keating contends that the trial court erred in failing to recognize his interest in bankruptcy funds held by the Chapter 13 bankruptcy trustee. We disagree.

Neither party addresses the proper standard of review applicable to this assignment of error. In *Tran v. Williams*, 10-1030 (La.App. 3 Cir. 2/9/11), 56 So.3d 1224, this court conducted a de novo review to address an argument made by the appellant that the trial court failed to properly use the quantum meruit approach as directed by the supreme court on rehearing in *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La.1979), and by the supreme court in *O'Rourke v. Cairns*, 95-3054 (La.11/25/96), 683 So.2d 697, to properly divide fees between successive attorneys representing a client.

Here, like in *Tran*, some clients were represented by Keating while he was employed by Galloway Jefcoat, and, thereafter, became the clients of Keating, individually. Also, akin to *Tran*, Keating's argument is that the trial court erred by using an improper method. However, unlike the appellant in *Tran*, Keating cites no alternative method reasonably possible given the evidence in the record that was mandated for the trial court to have used. Rather, he argues that the trial court improperly relied upon the bankruptcy court's division of the fees held by the Chapter 13 bankruptcy trustee because the bankruptcy court's division was never intended to have any weight with the trial court. Thus, Keating's argument is that the trial court erred in failing to disturb the fee division made by the bankruptcy court. As such, in determining if this assignment of error has merit, we must analyze the method used by bankruptcy court and whether the trial court gave

7

improper weight to that method in determining that it would not disturb the division of fees made by the bankruptcy court.

Prior to the proceedings in the bankruptcy court, the clients whose fees were held by the Chapter 13 bankruptcy trustee were asked to select either Galloway Jefcoat or Keating as a continuing counsel of record. The bankruptcy court ordered the trustee to disburse any fees to Galloway Jefcoat where the client selected Galloway Jefcoat as the continuing counsel of record. The bankruptcy court stated that it did so based on its interpretation of Paragraph 2 of the employment agreement. Paragraph 2 of the employment agreement is comprised of the following language: "[a]ll cases garnered are to be considered cases of Galloway & Jefcoat LLP and/or Bankruptcy Clinic of Acadiana." The bankruptcy interpreted this paragraph to extinguish any question whether there was a joint venture between Keating and Galloway Jefcoat that gave Keating any rights over and above whatever rights were in the employment agreement. After ruling on these selection of cases, the bankruptcy court stated, "[t]o the extent that Mr. Keating is entitled to any compensation under the employment agreement, based on any of these fees that are generated on these cases; I believe that is a matter of state law."

Thereafter, the bankruptcy court addressed the cases where the clients selected Keating as the continuing counsel of record. Like the bankruptcy court, we observe that this situation is analogous to when a client is represented by multiple, successive attorneys throughout the client's case and the fees earned from the case must be divided. Here, we have a situation where the client has an attorney who is obligated to share the fees earned with a firm, the attorney then leaves the firm, and continues to represent the client and continues to earn fees, individually.

For clients situated as such, the bankruptcy court discussed various methods to use when one lawyer takes over for another lawyer, including a quantum meruit basis. The bankruptcy judge acknowledged that a basis of quantum meruit should apply, but neither Keating nor Galloway Jefcoat provided evidence sufficient for it to divide the fees using that method. Therefore, the bankruptcy court chose a method where the date of the confirmation order was used to determine whether the fees earned from a particular client were distributed fully to Keating or Galloway Jefcoat. If the date of the confirmation order for a particular client was while Keating was employed at Galloway Jefcoat, the entire fee earned from representing that client was disbursed to Galloway Jefcoat. If the date of the confirmation order was dated after Keating's employment with Galloway Jefcoat, the entire fee was disbursed to Keating.

The bankruptcy court used the date of the confirmation order for two specified reasons. First, according to the bankruptcy court, the overwhelming majority of a bankruptcy attorney's fees have already been earned once a confirmation order exists. Second, as stated above, the bankruptcy court found insufficient evidence to divide the fees using a quantum meruit basis.

In analyzing the method using by the bankruptcy judge, we acknowledge that it potentially fails to compensate Keating for the percentage of the fees that he rightfully earned under his employment agreement while he was employed at Galloway Jefcoat. However, the employment agreement specified that Keating's guaranteed monthly salary and the expenses associated with Keating's practice at Galloway Jefcoat, including any salary of Keating's office staff, had to be offset prior to his ever receiving the funds acquired from a particular client.

Moreover, the bankruptcy court's division of the fees can also be to the benefit of Keating depending of the date of the confirmation order. While the

9

method used can fail to compensate Keating for the percentage of the fees that he rightfully earned under his employment agreement, it fails to compensate Galloway Jefcoat its percentage of the fees that it rightfully was entitled to under the employment agreement for any work that Keating did on a client's case while he was employed at Galloway Jefcoat.

Next, we consider whether the trial court gave improper weight to the bankruptcy court's division of the fees. Contrary to Keating's assertions, our review of the record indicates that the trial court's decision to adhere to the division was not based on it finding that the bankruptcy court's division was legally correct. Rather, the trial court found that the bankruptcy court's method was necessitated by the failure of both parties to submit evidence of the quantum meruit basis each had in the disputed fees.

Thereafter, like the bankruptcy court, the trial court found insufficient evidence submitted by either party to conduct a distribution of the fees using a quantum meruit basis. As such, the trial court, based on its finding that Keating's testimony lacked credibility regarding which client was his as opposed to Galloway Jefcoat's, chose to divide the fees based strictly on its interpretation of the employment agreement. Once this choice was made, the trial court then deferred to the bankruptcy court's knowledge regarding when the overwhelming majority of a bankruptcy attorney's fees have already been earned, i.e., once a confirmation order exists.

Keating's first argument in this assignment of error likens the trial court's failure to disturb the bankruptcy court's division of fees to an endorsement of the method used by the bankruptcy court, but the record indicates otherwise. We find that the trial court chose to not disturb the bankruptcy court's division of fees based more on Keating's failure to submit any evidence outside of his testimony to

10

support his claim for most of those fees. In fact, the trial court even acknowledged that the division of fees by the bankruptcy judge was not intended to be given any weight at trial.

Accordingly, we find that the trial court did not disturb the bankruptcy court's division of the fees because Keating failed to provide any credible evidence of the quantum meruit basis he had in the fees or any other evidence that the fees should be disbursed differently than according to the language in the employment agreement. As such, it is clear that the trial court did not improperly give weight to the bankruptcy court's division of fees as Keating contends.

Keating's second argument that the trial court erred in adhering to the bankruptcy court's division is that the result of the method used places a burden on him to work an extra period of time in order to collect his earned, contractual bonuses in violation of La.R.S. 23:634(A). We do not agree.

Louisiana Revised Statutes 23:634(A) states:

> No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

The trial court found that Keating's employment agreement defined his compensation earned in calculating whether he was entitled to his monthly bonus based on when fees were actually collected and not on when services were provided entitling him to those fees. According to the trial court, basing a bonus on when fees are collected as opposed to when the services are performed to entitle one to those fees does not violate La.R.S. 23:634(A). In support of its finding, the trial court cited *Becht v. Morgan Buildings & Spas, Inc.*, 01-1091 (La.App. 1 Cir. 6/21/02), 822 So.2d 56, *affirmed*, 02-2047 (La. 4/23/03), 843 So.2d 1109, *cert.*

11

*denied*, 124 S.Ct. 289, 540 U.S. 878 (2003). Keating contends that the trial court's reliance on *Becht* is improper because his case is distinguishable from *Becht*.

Keating points out that there were many factors tied to when the commission was earned in *Becht* while there were no such factors tied to when his bonus is earned in the language of his employment agreement with Galloway Jefcoat. It is true that the employment agreement in *Becht* spelled out what factors were tied to when a commission was earned while the employment agreement here does not. However, we do not find that this distinction is dispositive.

Keating then asserts that a more appropriate case to consider is that of *Patterson v. Alexander & Hamilton, Inc.*, 02-1230 (La.App. 1 Cir. 4/2/03), 844 So.2d 412. According to Keating, *Patterson* stands for the proposition that when the collection of a fee is outstanding and beyond the employee's control, the employee has earned that fee and any commission tied to it. The context of that proposition in *Patterson* that is cited by Keating is telling.

Just prior to the statement highlighted by Keating, the *Patterson* court quotes the following language from *Becht*: "[w]hen commission sales are at issue, the inquiry of whether a wage was actually earned focuses on what work associated with the sale remained at the time of [termination]." *Patterson*, 844 So.2d at 416 (quoting *Becht*, 822 So.2d at 59) (second alteration in original). The *Patterson* court went on to find that "[f]rom the evidence in the record, it appears that collection of the contract amounts was the only outstanding work remaining to complete the sales…." *Patterson*, 844 So.2d at 417. Contrarily, here, for nearly all the clients, there is no evidence in the record, other than Keating's testimony, pertaining to what outstanding work, if any, remained in order to earn the attorney's fees. The trial court reasonably found that Keating's testimony lacked

12

credibility. Thus, here, unlike in *Patterson*, the evidence in the record does not indicate what work was outstanding.

Further, we are not moved by Keating's criticism of the trial court's application of *Becht*. Keating testified that the calculation of whether he was entitled to the bonus was based on when the fees were collected, not when the work was done to collect those fees, irrespective of the lack of specific factors listed in his employment agreement that are tied to his entitlement to his monthly bonus.

Accordingly, we find that Keating's assignment of error number two is without merit. The trial court decision to leave the bankruptcy court's division of the Chapter 13 bankruptcy fees undisturbed was not in error. Its decision was based on finding that Keating failed to produced credible evidence that a different division of those fees was necessitated. Further, the trial court's application of that division does not violate La.R.S. 23:634(A).

**KEATING'S ASSIGNMENT OF ERROR NUMBER THREE:**

Keating, in his third assignment of error, contends that the Trial Court erred in refusing to recognize his entitlement to 75% or $5,441.36 of the Construction Resources Link fee for work that was completed prior to his termination. We agree.

Unlike the situation in assignment of error number two, in this assignment of error, there is evidence in the record other than Keating's testimony that supports his position. Included in the record is an order granting the application for compensation and reimbursement of expenses by attorney for the debtor. These orders are dated during the period in which Keating was working for Galloway Jefcoat and list Keating as the counsel of record for Construction Resources Link, Inc. Also included in the record are copies of checks from Construction Resources

13

Link, Inc. that are dated after Keating's employment with Galloway Jefcoat. The case number on those checks matches the case number referenced in the order granting attorney's fees and reimbursement of expenses.

Further, it is clear from the date of these checks that when they were received by Galloway Jefcoat, Keating did not have the burden of offsetting his salary and expenses at Galloway Jefcoat as was required by the employment agreement prior to his actually receiving these funds. The work to acquire the fees was clearly done by Keating, and both the terms of the employment agreement and the practice between Keating and Galloway Jefcoat was that those fees were not deemed to have been earned until collected. This occurred after Galloway Jefcoat ceased to incur any expenses in funding Keating's practice. Accordingly, we find that Keating is entitled to his agreed upon percentage of those fees, and amend the trial court's judgment to recognize that Keating is entitled to 75% or $5,441.36 of the Construction Resources Link, Inc. fees.

**KEATING'S ASSIGNMENT OF ERROR NUMBER FOUR:**

Keating's final assignment of error is quite lengthy, but, in summary, argues that the trial court erred in awarding fees to Galloway Jefcoat that Keating contended were derived from cases in his preexisting book of business. Alternatively, Keating argues that if these fees are to be disgorged, then the fees should have been divided using the applicable percentages under the terms of his employment agreement rather than fully awarded to Galloway Jefcoat. We disagree with both the assigned error and the alternative argument asserted by Keating.

Like assignment of error numbers one and two, Keating's testimony is his entire basis for this assignment. Other than his testimony, Keating points to no evidence in the record corroborating his assertions that many of the clients whose

14

fees were in dispute were contained in his book of business.  In his alternative argument, Keating points to no evidence in the record as to which month these fees were earned and whether he would have actually received those fees by offsetting the costs of his salary and the expenses of funding his practice.  Accordingly, like in assignments of error numbers one and two, our upholding of the trial court's finding that Keating's testimony lacked credibility renders this assignment of error to be without merit.

**GALLOWAY JEFCOAT'S ASSIGNMENT OF ERROR:**

Galloway Jefcoat, in its sole assignment of error, asserts that the trial court erred by involuntarily dismissing its claim for its investigative costs, particularly the time and labor expense incurred by its employees in identifying, documenting an establishing Keating's wrongful acts.  We find no merit to this assertion.

Louisiana Code of Civil Procedure Article 1672 dictates that the trial court may dismiss the claim if, after considering and weighing the plaintiff's evidence, it determines that the plaintiff has not met its burden of proof. *Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271.  Therefore, the grant of an involuntary dismissal by a lower court is subject to a manifest error standard of review. *Gauthier v. City of New Iberia*, 06-341 (La.App. 3 Cir. 9/27/06), 940 So.2d 915. Louisiana Code of Civil Procedure Article 1672(B) states:

> B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

Here, Galloway Jefcoat brought a claim to recover its expenses for the time its employees worked to find what evidence it had against Keating that he had

15

improperly handled funds. The majority of the claim was an amount that Galloway Jefcoat calculated using the hourly rate for the time spent researching the matter by John M. Jefcoat, a managing partner of Galloway Jefcoat. The trial court dismissed this claim upon Keating's motion after Galloway Jefcoat's presentation of its evidence in support of its claim.

It is well established that costs incurred in anticipation of litigation are not recoverable as damages. *New Zion Baptist Church v. Mecco, Inc.*, 478 So.2d 1364 (La.App. 4 Cir. 1985); *Holden v. Clearview Dodge Sales, Inc.*, 416 So.2d 335 (La.App. 4 Cir.), *writs denied*, 421 So.2d 248-49 (La.1982); *Martin v. AAA Brick Co., Inc.*, 386 So.2d 987 (La.App. 3 Cir. 1980); *Liberto v. Villard*, 386 So.2d 930 (La.App. 3 Cir. 1980); and *Acme Steel Co. v. A. J. Warehouse, Inc.*, 212 So.2d 271 (La.App.4 Cir. 1968). However, Galloway Jefcoat cites the case of *Smith v. Burden Construction Co.*, 379 So.2d 1135 (La.App. 4 Cir. 1980), for the proposition that an employer can recover damages from its former employee for its costs associated with paying its salaried employees for repairing the damages caused to it by that former employee. *See also Louisiana Power & Light Co. v. Smith*, 343 So.2d 367 (La.App. 1977), and *Rader v. Harper Aviation, Inc.*, 246 So.2d 362 (La.App. 4 Cir. 1971).

However, the *Smith* case cited by Galloway Jefcoat involved an employee who had been found by the trial court to have embezzled from the employer, an intentional tort. Additionally, the appellate court in *Smith* was upholding the judgment of a lower court that was based on the lower court's finding that the damages suffered by the employer were clearly established. Here, while Galloway Jefcoat may contend that Keating behaved similarly, there is not a finding by the trial court that Keating was intentionally tortious. In addition, we cannot say that the trial court is manifestly erroneous in finding that the dismissed items in

16

Galloway Jefcoat's claim were undertaken for litigation preparation purposes. These are not recoverable as damages. Accordingly, we do not find any merit to Galloway Jefcoat's assignment of error.

**CONCLUSION:**

D. Patrick "Rick" Keating raised four assignments of error. We find substance in his assertion that the trial court erred in failing to recognize his entitlement the contracted share of the fees earned in representing Construction Resources Link, Inc. for work that was completed prior to his termination. Therefore, we amend the trial court's judgment to reflect this finding. We find that Keating's remaining assignments of error are without merit.

Galloway Jefcoat, LLP raised a single assignment of error. We find a reasonable basis for the trial court to involuntarily dismiss the items that it did from Galloway Jefcoat's claim. We assess the costs of these proceedings one half to each Keating and Galloway Jefcoat.

**AFFIRMED, AS AMENDED.**